# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3202

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| | * | |
| Scott Snelson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 12, 2008
Filed: February 10, 2009

_____

Before WOLLMAN, JOHN R. GIBSON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Scott Snelson pled guilty to one count of bank fraud in violation of 18 U.S.C. § 1344, and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A. His plea agreement contained a waiver of his appellate rights. He appeals the district court's[1] denial of his request for a 30-day continuance and his sentence of 57 months of imprisonment. We affirm.

_____

[1]The Honorable Carol E. Jackson, Chief Judge, United States District Court for the Eastern District of Missouri.

I.

On March 22, 2007, a federal grand jury indicted Scott Snelson on eight counts of bank fraud and two counts of aggravated identity theft. The case was set for trial on June 18, 2007. In May of 2007, Snelson's counsel left for Florida and did not return until June 11 or 12. Before Snelson's counsel left for Florida, an Assistant United States Attorney ("AUSA") not handling the case called Snelson's counsel and asked if he could have lunch with Snelson. The AUSA explained that he and Snelson were social acquaintances. Snelson's counsel agreed to the lunch provided that they did not discuss his client's case.

At the lunch, Snelson informed the AUSA that he had valuable information about an unrelated criminal investigation. Snelson's counsel learned of this proffer when he returned from Florida. On June 15, 2007, Snelson's counsel contacted the AUSA prosecuting Snelson's case to discuss the possibility of a plea agreement. However, the government was uncertain as to the extent and value of Snelson's proffered assistance.

On June 18, 2007, the parties appeared before the district court. They had not yet reached a plea agreement because the government was considering the impact of Snelson's proffer of assistance. Snelson wanted more time to demonstrate the value of his assistance. Accordingly, he requested a 30-day continuance. The government did not object. The district court denied the continuance and ordered the parties to appear on June 20, 2007, either for a change of plea or to commence the trial.

On June 20, 2007, Snelson changed his plea on two counts and pled guilty to one count of bank fraud in violation of 18 U.S.C. § 1344, and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A. The government agreed not to prosecute the other eight counts in the indictment. Snelson's plea agreement noted the possibility that the government might file a motion for downward departure to reflect

-2-

his substantial assistance pursuant to United States Sentencing Commission, Guidelines Manual, §5K1.1 and 18 U.S.C. § 3553(e). In his plea agreement, Snelson waived his right to appeal the district court's sentence if the sentence was (1) determined using the recommendations agreed to by the parties and (2) within the Sentencing Guidelines range.[2]

The Presentence Report ("PSR") concluded that Snelson's Criminal History Category was VI and his offense level for the bank fraud was 11. The PSR stated that Snelson's criminal history included five convictions for forgery, one conviction for obtaining money under false pretenses, five convictions for passing bad checks, and a conviction for assault in the third degree. The advisory Sentencing Guidelines range was 27 to 33 months on the bank fraud count, and a mandatory two-year consecutive sentence on the count for aggravated identity theft.

On August 28, 2007, the government filed a motion for downward departure pursuant to USSG §5K1.1 and section 3553(e) due to Snelson's continued cooperation and assistance. On August 30, 2007, the district court held a sentencing hearing. Snelson's counsel did not object to the recommendations in the PSR. The district court then sentenced Snelson to 33 months of imprisonment on the bank fraud count and a consecutive 24 months for aggravated identity theft, for an aggregate sentence of 57 months. The district court considered the motion for downward departure but denied the motion, finding that to grant the motion would result in an unreasonable

---

[2]The plea agreement states, in relevant part:

In the event the Court accepts the plea and, in sentencing the defendant, 1) applies the recommendations agreed to by the parties herein, and 2) after determining a Sentencing Guideline range, sentences the defendant within that range, then, as part of this agreement, both the defendant and the government hereby waive all rights to appeal all sentencing issues, including any issues relating to the determination of the Total Offense Level and the Criminal History Category.

sentence. The district court recognized that Snelson had provided substantial assistance to the government and that the motion "clearly establishe[d] grounds for a downward departure." However, the court denied the motion because of Snelson's extensive history of criminal conduct, noting that Snelson had been treated leniently for his past convictions and that this had failed to deter his conduct.

On appeal, Snelson argues that the district court erred in denying his request for a 30-day continuance. He also contends that the district court erred in denying the motion for downward departure because the court based its denial on matters extraneous to the assistance he provided to the government. Snelson does not discuss the impact his appeal waiver has on his ability to contest his sentence.

II.

"As a general rule, a defendant is allowed to waive appellate rights." United States v. Gray, 528 F.3d 1099, 1102 (8th Cir. 2008) (quoting United States v. Andis, 333 F.3d 886, 889 (8th Cir. 2003) (en banc)). "Plea agreements are contractual in nature and should be interpreted according to general contract principles." United States v. Sanchez, 508 F.3d 456, 460 (8th Cir. 2007). The government's promise to drop some charges in exchange for a guilty plea provides the consideration necessary to support the bargain contained in the plea agreement. See Gray, 528 F.3d at 1102.

"When we review [a]n [appeal] waiver, we must make two determinations: that the issue falls within the scope of the waiver and that both the plea agreement and the waiver were entered into knowingly and voluntarily." Id. (quoting United States v. McIntosh, 492 F.3d 956, 959 (8th Cir. 2007)). "Even if both of these determinations are decided in the affirmative, we will not enforce a plea agreement waiver if enforcement would cause a miscarriage of justice." Id. "The government bears the burden of establishing (1) that the appeal is clearly and unambiguously within the scope of the waiver, (2) that the defendant entered into the waiver knowingly and

voluntarily, and (3) that dismissing the appeal based on the defendant's waiver would not result in a miscarriage of justice." Id.

Snelson knowingly and voluntarily waived his right to appeal his sentence. The district court reviewed with him the terms of the plea agreement, and Snelson acknowledged that he understood that he was waiving his right to appeal. In exchange for his guilty plea on two counts, the government agreed not to prosecute the eight other counts in the indictment, thereby providing the necessary consideration. Finally, enforcing the 57-month sentence would not result in a miscarriage of justice. See, e.g., United States v. Blue Coat, 340 F.3d 539, 542 (8th Cir. 2003) ("the miscarriage of justice exception is a very narrow exception to the general rule that waivers of appellate rights are enforceable"). Thus, the only issue left for us to determine is whether "the appeal is clearly and unambiguously within the scope of the waiver." See Gray, 528 F.3d at 1102.

Snelson's waiver of appellate rights was based on two conditions: (1) that the district court apply the sentencing recommendations agreed to by the parties, and (2) that the imposed sentence fall within the Sentencing Guidelines range. The PSR found that Snelson had a total offense level of 11 and a criminal history category of VI. Accordingly, the Guidelines range for the count of bank fraud was 27 to 33 months. For the count of aggravated identity theft, the Guidelines sentence was the term of imprisonment required by statute, which in this case was a consecutive sentence of two years with no probation. See 18 U.S.C. § 1028A(a)(1), (b)(1) (identity theft committed in relation to any enumerated felony "shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years" without probation); USSG §2B1.6(a) ("If the defendant was convicted of violating 18 U.S.C. § 1028A, the guideline sentence is the term of imprisonment required by statute.").

Both Snelson and the government accepted the recommendations in the PSR. Applying the PSR's recommendations, the district court imposed a sentence within the Sentencing Guidelines range, i.e. a 33-month sentence for bank fraud and a 24-month consecutive sentence for aggravated identity theft. Thus, both conditions of Snelson's waiver of his appellate rights were met. Accordingly, we dismiss Snelson's appeal of his sentence.

III.

Snelson also argues that the district court erred in denying his motion to continue the trial for 30 days. However, Snelson also waived his right to appeal "any issues relating to pre-trial motions."[3] His motion to continue was a pre-trial motion. For the reasons explained above, Snelson's waiver is valid. Accordingly, he has waived his right to appeal the denial of a continuance.

Even if he had not waived his right to appeal the denial of his continuance, we would affirm on the merits. "Trial courts are to be given broad discretion when ruling on requests for continuances." United States v. Quiroz, 374 F.3d 682, 684 (8th Cir. 2004) (quotation omitted). "Continuances generally are not favored and should be granted only when the party requesting one has shown a compelling reason." United States v. Cotroneo, 89 F.3d 510, 514 (8th Cir. 1996). "We will reverse a district court's denial of a continuance only if the court abused its discretion *and* the moving

---

[3]His plea agreement contains a section entitled "Non-Sentencing Issues," which reads:

In the event the Court accepts the plea, as part of this agreement, both the defendant and the government hereby waive all rights to appeal all non-jurisdictional issues including, but not limited to, any issues relating to pre-trial motions, hearings and discovery and any issues relating to the negotiation, taking or acceptance of the guilty plea or the factual basis for the plea.

party was prejudiced as a result." <u>United States v. Chahia</u>, 544 F.3d 890, 896 (8th Cir. 2008) (quotation omitted).[4]

At Snelson's hearing on June 18, 2007, the district court learned of the lunch between Snelson and the AUSA. After noting that the circumstances of this meeting were "very distressing," the district court explained that it had already given the parties ample time to prepare for trial. Snelson's counsel stated at the hearing that Snelson had no intention of going to trial and that he wanted to reach a plea agreement. The district court gave the parties two days either to come to a plea agreement or to proceed with trial.

Snelson speculates that given more time, his cooperation might have persuaded the government to drop the aggravated identity theft charge. However, the contents of the plea agreement belie his claim. In the agreement, the government dropped eight counts of the indictment and indicated that it might seek a downward departure at sentencing based on Snelson's assistance. As far as the record indicates, that is the extent of the government's generosity for his proffer of information. The district court did not abuse its discretion in denying Snelson's motion to continue the trial.

IV.

Accordingly, the judgment below is affirmed.

———————————————

---

[4]The government contends that we should review the denial of Snelson's motion to continue for plain error because he did not object after the district court denied it. Given that the motion had already been briefed and argued before the district court, requiring a party to make a *pro forma* objection after the denial of a continuance would be redundant.