RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0035p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

   *v.*

No. 10-6218

DEAN ANTHONY TOTH,
                    *Defendant-Appellant.*

─────────────────

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 08-00133-013—Jennifer B. Coffman, Chief District Judge.

Argued: January 18, 2012

Decided and Filed: February 6, 2012

Before: SUHRHEINRICH, GIBBONS, and McKEAGUE, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Mark Wettle, Louisville, Kentucky, for Appellant. Candace G. Hill, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee. **ON BRIEF:** Mark Wettle, Louisville, Kentucky, for Appellant. Candace G. Hill, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee.

─────────────────

## OPINION

─────────────────

   SUHRHEINRICH, Circuit Judge. Defendant Anthony Toth appeals the district court's denial of his motion to withdraw his guilty plea. However, because Toth agreed to waive his appeal rights, we DISMISS this appeal.

1

## I. Background

Toth was one of fourteen defendants charged with conspiring to steal government property, as part of a scheme to defraud the Veterans Administration ("VA") of disability benefits. Toth proceeded to trial, but on the third day, changed his mind and pleaded guilty. He entered into a written plea agreement that included an appellate waiver provision. Eighty days later Toth sent a letter to the court, complaining that he had been "coerced" into pleading guilty by counsel. The district court treated the letter as Toth's pro se motion to withdraw his guilty plea, appointed new counsel, held an evidentiary hearing, and ultimately denied the motion. Toth filed this appeal.

### A. The Criminal Charges

Co-defendants Daniel Parker and Jeffrey McGill were the organizers of the conspiracy. Parker was a National Service Office Supervisor with the Disabled American Veterans Service Organization in Louisville, Kentucky. Parker assisted veterans in their efforts to obtain disability benefits. Jeffrey McGill was employed as a Veteran Service Representative in the Department of Veterans Affairs Regional Office in Louisville, Kentucky. McGill had access to the veterans' claims files involved in this offense. Parker and McGill began their scheme in 2003, altering VA records, including medical records, to secure veterans' disability benefits for friends and relatives. In return, Parker and McGill received kickbacks from the lump-sum retroactive awards to those veterans.

Toth was a former officer in the United States Marine Corps. He was a fighter pilot, and flew F-18s. In 2004, while living in Mississippi, he was involuntarily but honorably discharged from active service. He received more than $69,000 in separation pay. At that time, he applied to the VA for benefits for a service-connected disability, claiming a disabling hearing loss. The Jackson, Mississippi VA office denied his claim, concluding that Toth's military records were "negative for diagnosis or treatment of hearing loss during [his] military career."

In 2005, Toth became a commercial pilot for Southwest Airlines and moved to Louisville, Kentucky.  In May or June 2007, Parker moved into the house next door to Toth's.  Parker and Toth became acquainted and Toth told Parker about the denial of his disability claim.  Parker reviewed Toth's records and noted that the Mississippi VA officer had not conducted a hearing exam on Toth.  Parker told Toth he could get Toth a 100% disability rating if Toth were willing to pay a kickback to Parker and a VA employee who would alter his medical records.

On July 12, 2007, Parker revived Toth's disability claim for hearing loss by requesting a hearing evaluation for Toth.  On August 10, 2007, Toth had his hearing tested.  Toth's hearing was within normal limits, but Parker substituted a report that showed bilateral hearing loss, tinnitus, and only 6% speech recognition in his left ear. Parker removed the yearly military hearing exams from Toth's file and all documents that mentioned his separation pay.

On October 31, 2007, the VA approved Toth's disability claim and paid him over $93,000 in benefits, retroactive to the date he first applied in Mississippi in 2004.  There was no offset.  Toth also began receiving monthly payments of approximately $2,500. On November 12, Toth deposited the lump-sum payment into his credit union, and then transferred most of the funds to his bank checking account.  On November 21, Toth made two separate $10,000 cash withdrawals from his checking account.  He made a third $10,000 cash withdrawal on November 26.  These multiple cash withdrawals did not require currency transaction reports.  On November 27, Toth wrote a check payable to Parker for $32,000.  He told the bank representatives that Parker was a contractor, making renovations to his house.  Toth ultimately paid Parker $62,000, or two-thirds of Toth's retroactive lump-sum payment.  Parker shared the money with McGill.  On January 7, 2008, the VA also gave Toth a lump-sum retroactive disability payment for his dependents.  On January 18, Toth paid two-thirds of that award to Parker as well.

Toth told law enforcement officials that the payments to Parker were charitable donations to the Disabled American Veterans.

In addition to the conspiracy charge, conspiring to steal government property, in violation of 18 U.S.C. § 371 (Count 1), Toth was charged with paying a bribe to an employee of the VA as part of the scheme, in violation of 18 U.S.C. § 201(b)(1)(A), (B), & (C) (Count 3); money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Count 7); structuring multiple banking transactions to evade reporting requirements, in violation of 31 U.S.C. § 5324(a)(3) (Count 8); and making false statements to a federal agent, in violation of 18 U.S.C. § 1001 (Count 9).

## B.  The Plea Proceedings

On the third morning of trial, the day Parker was scheduled to testify, Toth's counsel approached the prosecutors about the possibility of a plea.  By 9:30 a.m., the parties announced that they had reached a plea agreement.  Toth pleaded guilty to Counts 1 and 8, and in return the United States agreed that Toth would be sentenced to twenty-one months' imprisonment (the C plea).  *See* Fed. R. Crim. P. 11(c)(1)(C).

Before excusing the jury, the district court took a factual basis for the guilty plea.  Toth was placed under oath and admitted to the factual basis for his guilty plea.  Regarding Count 1, the conspiracy count,  Toth admitted that he "filed a claim with the VA, with representation from my neighbor"; that Parker "falsified documents to enhance my benefit capabilities" and that he agreed to pay and did pay Parker two-thirds of the back benefits in exchange for Parker's help.  Regarding Count 8, the structuring count, Toth admitted that he withdrew money in increments of $10,000 to pay Parker so as to avoid currency transaction reporting requirements.

The jury was excused and shortly thereafter the court reconvened to take Toth's guilty plea.  Toth was placed under oath and the guilty plea colloquy proceeded pursuant to Fed. R. Crim. P. 11(b)(1), (2), and (3).  The court questioned Toth and his two defense attorneys concerning Toth's competency to enter a guilty plea.  Toth said he was thirty-eight years old, held a bachelor's degree, had no drug or alcohol problems, had no nervous or mental or emotional issues, and had not seen a doctor in the last six months.  Toth told the court that he was satisfied with his counsel's representation.  Counsel also

told the court that although Toth was "very emotional," he was competent to enter the plea.

The prosecutor summarized the terms of the written plea agreement, which included a factual summary of Toth's criminal conduct. The prosecutor expressly noted that the parties agreed Toth would receive a sentence of twenty-one months' imprisonment, followed by two years of supervised release, and in return the government would move for dismissal of Counts 3, 7, and 9. The written plea agreement stated that Toth "admits all of the acts and the essential elements of the indictment counts to which he pleads guilty today." The prosecutor also expressly noted that the plea agreement contained a provision stating that "the defendant knowingly and voluntarily waives all of his appellate rights for both his conviction and the resulting sentence."

Toth indicated that he agreed with the prosecutor's oral summary of the plea agreement terms. Toth explicitly agreed that he had voluntarily given up his right to appeal his conviction or attack his sentence. Toth assured the court that he did not feel coerced or threatened, and that he was pleading guilty to Counts 1 and 8 because he was guilty.

The court explained to Toth that the parties had entered into a C plea, and had recommended a term of twenty-one months to the court. The court then advised Toth that if it accepted the recommended sentence, and accepted the plea agreement, he would not be able to withdraw his plea, absent a fair and just reason. Toth acknowledged that he understood.

Toth then pleaded guilty to Counts 1 and 8. The court accepted his plea, finding that it was entered into knowingly and voluntarily. The court indicated that it was accepting the plea agreement conditionally, and would accept it fully at sentencing "if everything is in order."

### C.  After the Plea

Eighty days later, but prior to sentencing, Toth sent a letter to the court, complaining that counsel had basically "tricked him" into pleading guilty for the sake of his little girls, and "not because of the truth."  In the letter Toth stated that he always "repaid his bills" and would "work to make this right."  He noted that the government had refused his offer to repay the monies and any penalties and to receive any punishments short of a felony conviction.

The district court held an evidentiary hearing.  Defense counsel testified.  Toth did not testify. The district court denied Toth's motion to withdraw his plea, after considering the factors outlined by this court for assessing whether the defendant has shown "a fair and just reason for requesting the withdrawal."  *See* Fed. R. Crim. P. 11(d)(2)(B).  *See also United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008) (listing factors to consider).

The district court proceeded to sentencing.  In his allocution, Toth acknowledged that counsel's advice to plead guilty was a "damage assessment," and was "what any young daddy would do for their family to try and keep them together."  Toth did not profess his innocence in allocution.  The court accepted the plea agreement and imposed a twenty-one month sentence.  This appeal followed.

### II.  Analysis

On appeal, Toth argues that the district court erred in denying his motion to withdraw his guilty plea.  The government responds that this contention constitutes an attack on his conviction and falls squarely within the appeal waiver in Toth's plea agreement.  The government therefore claims that we must dismiss this appeal.  We turn to the government's contention first.

### A.  Appeal Waiver

It is well settled that a defendant "may waive any right, even a constitutional right, by means of a plea agreement." *United States v. Calderon*, 388 F.3d 197, 199 (6th

Cir. 2004) (citation and internal quotation marks omitted).  Only challenges to the validity of the waiver itself will be entertained on appeal.  *See In re Acosta*, 480 F.3d 421, 422-23 (6th Cir. 2007); *United States v. Flowers*, 428 F. App'x 526, 530 (6th Cir. 2011) ("A waiver of appeal rights may be challenged on the grounds . . . of ineffective assistance of counsel"; citing *Acosta*); *United States v. Atkinson*, 354 F. App'x 250, 252 (6th Cir. 2009) (stating that "[a] waiver of appeal rights may be challenged on the grounds  that it was not knowing and voluntary, was not taken in compliance with Fed. R. Crim. P. 11, or was the product of ineffective assistance of counsel"; citing *Acosta*), *cert. denied*, 132 S. Ct. 332 (Oct. 3, 2011) (No. 11-5600).  Thus, an appeal waiver is enforceable if the defendant's waiver of his appellate rights was knowing and voluntary. *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001) (stating that the "sine qua non of a valid waiver is that the defendant enter into the agreement knowingly and voluntarily").

First, we look to see if the claim raised on appeal falls within the scope of the appellate waiver, *see United States v. Caruthers*, 458 F.3d 459, 470 (6th Cir. 2006), applying a de novo standard of review.  *See United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005) (waiver of the right to appeal the sentence).  Here, the appeal waiver provision states that Toth "knowingly and voluntarily waives the right . . . to directly appeal his conviction," and to "contest or collaterally attack his conviction . . . pursuant to 28 U.S.C. § 2255 or otherwise."

Toth argues that the appeal waiver is ambiguous, because the language of the waiver "says nothing about Toth waiving his right to motion the court pursuant to [Fed. R. Crim. P.11(d)] to withdraw his guilty plea after its entry."  Toth adds that "the waiver provision contained in the plea agreement does not mention guilty plea in any manner whatsoever."  This is a specious argument.  As the government points out, if a defendant enters a guilty plea pursuant to a plea agreement, reference in the plea agreement to the "conviction" can only mean the guilty plea from which the judgment of conviction resulted.  In Toth's case, the guilty plea that formed the basis of his criminal judgment remained valid because the district court refused to allow him to withdraw his guilty

plea.  Thus, the motion to withdraw his guilty plea is inextricably part of the judgment of conviction entered against him.  The appeal waiver in this case expressly bars direct appeal of a "conviction . . . pursuant to Fed. R. App. P. 4(b)."

Although this court has not directly spoken to the issue, several courts of appeals have held that "an appeal of a denial of a motion to withdraw a guilty plea is an attempt to 'contest a conviction on appeal,' and thus falls within the plain language of the waiver provision." *United States v. Elliott*, 264 F.3d 1171, 1174 (10th Cir. 2001); *United States v. Garner*, 283 F. App'x 176, 178 (4th Cir. 2008) (same, citing *Elliott*; holding that waiver was not enforceable however because not knowingly and intelligently made); *United States v. Daniels*, 278 F. App'x 161, 162 (3d Cir. 2008) (same); *United States v. Leon*, 476 F.3d 829, 832 (10th Cir. 2007) (per curiam) (same; citing *Elliott*); *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001) (per curiam) (noting that an appeal of a district court's denial of a defendant's motion to withdraw a guilty plea is "an issue related to the merits of the underlying conviction").  *See also United States v. Gray*, 528 F.3d 1099, 1102 (8th Cir. 2008) (dismissing the defendant's appeal of the district court's denial of his motion to withdraw his guilty plea; enforcing an appeal waiver because the issue was within the scope of the waiver provision in the plea agreement and the defendant's plea was knowing and voluntary); *United States v. Michlin*, 34 F.3d 896, 898-901 (9th Cir. 1994) (dismissing the appeal from the district court's denial of a motion to withdraw his plea on the ground that the defendant had waived the right to appeal).  Like those courts, "[w]e see no material difference between waiving this right and waiving other rights to appeal," so we likewise should enforce the waiver and dismiss the appeal.  *Elliott*, 264 F.3d at 1173.  We therefore likewise hold that an appeal of the denial of a motion to withdraw a guilty plea is an attack on the conviction subject to an appeal waiver provision.

Toth cites *Gray* as support for his argument that the appeal waiver provision in this case  was not sufficiently explicit to bar this appeal.  In *Gray*, the written plea agreement specifically provided that "the defendant fully understands that there will be no right to withdraw the plea entered under this agreement, except where the Court

rejects those portions of the plea agreement which deal with charges the government agrees to dismiss . . . [and] [to] *waive all rights to appeal . . . any issues relating to the negotiation, taking or acceptance of the guilty plea or the factual basis for the plea.*" *Gray*, 528 F.3d at 1099. However, simply because the language of the appeal waiver in *Gray* was more explicit than that in Toth's plea agreement does not mean that the waiver here is not clear enough (brevity does not necessarily create ambiguity). Neither the Eighth Circuit nor any other circuit has required such explicit language to waive appeal of a conviction resulting from denial of a motion to withdraw a guilty plea. *See, e.g., United States v. Morrison*, 171 F.3d 567, 568 (8th Cir. 1999) (holding that the defendant waived his right to appeal from the district court's denial of his motion to withdraw his guilty plea based on language in appeal waiver that the defendant waived "any right to raise and/or appeal . . . any and all motions . . . which defendant has asserted or could assert to this prosecution and to the Court's entry of judgment").

Enforcing appeal waivers makes good sense as well. *See Elliott*, 264 F.3d at 1173-74. A waiver of appellate rights gives a defendant a means of gaining concessions from the government. The government benefits too, by saving the time and money involved in arguing appeals. *Id.* (citations omitted).

As noted, this rule is subject to the proviso (among others) that the waiver be knowing and voluntary. Toth does not claim that his guilty plea was constitutionally defective. If he had, it would not change the conclusion in this case. In addition to attesting in writing that he understood and voluntarily agreed to the plea agreement, Toth told the district court under oath that he understood the waiver, and "gave up those rights voluntarily." The court found that Toth was competent to enter into the plea agreement and that he did so willingly. Moreover, the record reflects the care taken by the district court in this case to ensure that Toth understood the full ramifications of his plea.

### B. Motion to Withdraw

Because we hold that the appeal waiver in this case applies to Toth's appeal of the denial of his motion to withdraw his guilty plea, we do not address this argument.

### III. Conclusion

Toth's appeal is **DISMISSED.**