**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0368n.06

**No. 12-3795**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | **Apr 12, 2013** |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JEFFREY N. ENGLISH, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  DAUGHTREY, SUTTON, and KETHLEDGE, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.   Defendant Jeffrey English entered into a plea agreement with the government that included his admission that he had attempted to coerce or entice an individual to travel in interstate commerce for the purpose of engaging in prostitution. After accepting the defendant's guilty plea and conducting a sentencing hearing, the district court sentenced English to 21 months in prison and five years on supervised release.  The defendant now appeals, alleging that the district court made erroneous factual findings and imposed a sentence that was both procedurally and substantively unreasonable.  In addition, English asserts that his attorney provided ineffective assistance of counsel during the sentencing process.

In the plea agreement, English waived his right to raise the challenges to his sentence that he now seeks to put before this court.  We thus are unable to review those allegations of error.

Moreover, because English's claim of ineffective assistance of counsel is better left to resolution in

a proceeding under 28 U.S.C. § 2255, we decline to address that appellate issue as well and affirm

the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

In his plea agreement with the government, English acceded to the following factual basis

for his guilty plea:

> Between January 7, 2011 and January 19, 2011 Defendant and a confidential source of the FBI, engaged in a series of conversations concerning the source's alleged plan to provide female prostitutes to men in the state of Michigan, and Defendant's plan to recruit females for this purpose. Such conversations were monitored and recorded. On or about January 11, 2011, during a recorded conversation, Defendant claimed to have several females he was interested [in] prostituting. On or about January 19, 2011, during a recorded conversation, Defendant asked the source for money for helping to recruit females. Defendant was informed that the females being recruited would be prostituted in the State of Michigan. On or about January 19, 2011, during a recorded meeting with the source, Defendant accepted $100 for recruiting females into prostitution. Additional conversations were monitored and recorded in which Defendant claimed to have printed off hotel information from hotels in the State of Michigan. These hotels were to be used while the recruited females were engaging in prostitution. On or about January 19, 2011, during a recorded conversation, Defendant invited the source to meet a female, who Defendant expected would be used by the source for prostitution. Defendant invited the source to meet this female at his place of employment, the St. Martin De Porres Family Center, 1264 East 123rd Street, Cleveland, Ohio. On or about January 20, 2011, Defendant introduced a source to an eighteen year old female. The purpose of this meeting was so that this source could meet and make arrangements to use this female in prostitution. This meeting occurred in the St. Martin De Porres Family Center, 1264 East 123rd Street, Cleveland, Ohio.

The plea agreement also provided:

Defendant expressly and voluntarily waives [his right to appeal his conviction or sentence], except as specifically reserved below. Defendant reserves the right to appeal: (a) any punishment in excess of the statutory maximum; (b) any sentence to the extent it exceeds the maximum of the sentencing range determined under the advisory Sentencing Guidelines in accordance with the sentencing stipulations and computations in this agreement, using the Criminal History Category found applicable by the Court; or (c) the Court's determination of Defendant's Criminal History Category. Nothing in this paragraph shall act as a bar to Defendant perfecting any legal remedies Defendant may otherwise have on appeal or collateral attack with respect to claims of ineffective assistance of counsel or prosecutorial misconduct.

Prior to recommending to the district judge that she accept the defendant's plea, a magistrate judge questioned English thoroughly to ascertain whether the defendant understood each right he was foregoing by entering into the plea agreement. Specifically, the magistrate judge directed the government representative to summarize each provision of the plea agreement, including the appellate waiver. Then, the magistrate judge addressed the defendant directly and asked him, "Do you understand that that provision indicates that you cannot appeal your sentence, except under the limited circumstances permitted by that section, sir?" English answered, "Yes, I do, Your Honor."

Finding that the defendant was competent and understood each provision of the plea agreement, the magistrate judge recommended that the district judge accept English's guilty plea. The district court eventually did so and scheduled a sentencing hearing to be conducted after the United States Probation Office completed a presentence report on English.

In that report, the probation officer noted that the defendant initially admitted his guilt in a presentence interview. Only one week later, however, English made an additional statement to the

probation officer in which the defendant attempted to assign all criminal blame to the FBI's source. In doing so, English claimed that he brought the 18-year-old victim to his place of employment for the purpose of speaking with the source about obtaining a restaurant job. Despite the existence of audio recordings indicating that English sought to prostitute the young woman when he drove her to the meeting with the source, he insisted before the probation officer that he had no idea that the source would engage the victim in talk about sexual activities.

In light of English's later statement attempting to exonerate himself of any wrongdoing, the district judge concluded that the defendant was not deserving of a two-level sentence reduction for acceptance of responsibility. Even at the sentencing hearing, English, through his attorney, sought to explain away the apparent discrepancy in the defendant's two statements by admitting that he sought to prostitute some women but claiming that his intention in bringing the one particular victim to his workplace was solely to help her procure legitimate employment in the food-service industry. The district court refused to credit such an explanation, however, in large part because audiotapes played during the sentencing hearing refuted English's exculpatory account. Ultimately, therefore, the district court concluded that, despite the defendant's guilty plea, English had not accepted responsibility for his wrongdoing completely or in a timely manner. The district judge therefore decided to sentence English in accordance with the provisions of section 2G1.1(a)(2) of the 2010 edition of the United States Sentencing Guidelines as a level 14, criminal-history-category I offender to a prison sentence within the applicable Guidelines range of 15 to 21 months.

When deciding exactly where within that range to sentence the defendant, the district court examined English's personal and financial history and his employment record. In doing so, the district judge noted her dismay that the defendant, a youth-services counselor, attempted to involve one of the young adults using the services at the center where English worked in the plot to provide Ohio females for prostitution in Michigan. Recognizing the "tricky" situation presented by such a fact given "some of the issues that are in this case," the district judge chose to sentence the defendant to 21 months in prison, the maximum sentence allowed within the applicable range set forth in the Guidelines. Upset that he was denied a two-level reduction for acceptance of responsibility, and also that he was sentenced at the upper end of the Guidelines range, English filed this appeal.

## DISCUSSION

Despite the vigor with which the defendant attacks the 21-month sentence imposed upon him by the district court, we are not at liberty to review his sentencing challenges given the knowing and voluntary waiver of appellate rights included in English's plea agreement. "It is well settled that a defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004) (citation omitted). "[A]n appeal waiver is enforceable if the defendant's waiver of his appellate rights was knowing and voluntary." *United States v. Toth*, 668 F.3d 374, 378 (6th Cir. 2012) (citing *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001)).

As noted earlier, the magistrate judge who recommended that the district court accept English's guilty plea questioned the defendant thoroughly and established that the plea was both knowingly and voluntarily entered. During that colloquy with the defendant, the magistrate judge ascertained that English was a college graduate, that the defendant's cognitive abilities were not impaired by use of either alcohol or medications, and that English and his attorney had discussed the elements of the charged offense, the possible penalties, and the constitutional rights he was waiving by pleading guilty. The magistrate judge also explained the appeal waiver to the defendant, who indicated his understanding of the import of that agreement.

At the conclusion of that discussion, and after the government and the defendant agreed upon the factual basis for the plea, the magistrate judge found that English was "fully competent and capable of entering an informed plea, that he [was] aware of the nature of the charges brought against him and the consequences of his plea, and that his plea of guilty to the information in this case [was] a knowing and voluntary plea." Nothing in the record before us calls that conclusion into question. It is, therefore, incumbent upon us to determine next whether the issues that English seeks to raise "on appeal fall[ ] within the scope of the appellate waiver." *Toth*, 668 F.3d at 378.

Distilled to their essence, the issues raised on appeal by the defendant contest the decision of the district court to deny English credit for acceptance of responsibility, the procedural reasonableness of the 21-month sentence, the substantive reasonableness of the sentence, and the effectiveness of the legal representation provided by defense counsel. We believe that those claims,

except for the challenge to counsel's performance, fall within the parameters of the plea agreement's appellate-waiver provision.

To reiterate, that waiver permits appeals from the district court's sentencing determination only in very limited circumstances. For instance, English could pursue an appeal of his sentence if that punishment is "in excess of the statutory maximum." However, the defendant's 21-*month* sentence in this case clearly did not exceed the maximum 20-*year* punishment provided for in 18 U.S.C. § 2422(a).

The plea agreement also allows sentencing appeals challenging the district court's "determination of Defendant's Criminal History Category." English does not dispute the district court's calculation of the appropriate criminal history category in this case. In fact, both English and the government agree that the defendant had no prior criminal record that would justify categorizing the defendant as anything but a criminal-history-category-I offender.

Consequently, the only hook that English can use to bring his sentencing challenges before us on appeal is an argument that his 21-month sentence "exceeds the maximum of the sentencing range determined under the advisory Sentencing Guidelines in accordance with the sentencing stipulations and computations in" the plea agreement. In an effort to do just that, English argues, in effect, that his applicable sentencing range should be the range commensurate with a criminal history category of I and an offense level of 12 (the section 2G1.1(a)(2) base offense level of 14 minus two levels for acceptance of responsibility). Because the imposed 21-month sentence is

longer than the 16-month sentence that would serve as the maximum punishment for the level-12, criminal-history-category-I sentencing range, the defendant presumes that he is allowed to pursue his arguments on appeal.

What English fails to realize, however, is that the maximum of the sentencing range that must be exceeded before the defendant may appeal his sentence is *not* the sentencing range associated with the sentence computation that English believes is appropriate. Rather, the sentencing-range maximum that must be exceeded before the plea agreement would allow an appeal is the Guidelines range determined "in accordance with the sentencing stipulations and computations in [the plea] agreement." However, we need not speculate as to what those "sentencing stipulations and computations" might be. Indeed, the plea agreement itself contains a paragraph entitled "Stipulated Guideline Computation" that evidences the parties' agreement that offense level 14 "represents the correct computation of the applicable offense level."

It is true that the "Stipulated Guideline Computation" paragraph also contains wording stating that offense level 14 constitutes the appropriate level "before Acceptance of Responsibility." Nevertheless, it is equally clear that the parties did not "stipulate" that a two-level, acceptance-of-responsibility reduction was appropriate in this case. Although the very next paragraph of the plea agreement references the government's belief, at that time, that English had accepted personal responsibility for his conduct, that same paragraph emphasizes that the defendant "understands it will be up to the Court at the time of sentencing to determine whether a reduction for acceptance of responsibility is appropriate." In light of such a recognition, we cannot conclude that the plea

agreement manifested "sentencing stipulations and computations" that envisioned a level-12 sentencing range for the defendant.

We thus conclude that English's 21-month sentence did not exceed the maximum of the sentencing range determined "in accordance with the sentencing stipulations and computations in" the agreement. As a result, the appellate issues directly related to the defendant's sentence have been knowingly and voluntarily waived.

Explicitly exempted from the appellate waiver in the plea agreement were any claims of ineffective assistance of counsel in connection with the imposition of the sentence. However, we have consistently expressed in our decisions that "such claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so parties can develop an adequate record on this issue." *United States v. McAllister*, 693 F.3d 572, 586 (6th Cir. 2012) (quoting *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005) (internal quotation marks and citations omitted)). We see no reason not to heed our own advice in this matter, given the fact that the record before us has not been developed sufficiently to allow us to examine the rationale for defense counsel's decisions.

**CONCLUSION**

English's plea agreement contained a valid, knowing, and voluntary relinquishment of his right to challenge his sentence on the grounds he seeks to advance in this appeal. Those claims thus are not properly before us for review. Although the appellate waiver did not foreclose the defendant's challenge based upon the alleged ineffective assistance provided by his counsel, the

record before us is not sufficient to review that claim properly. We thus AFFIRM the judgment of

the district court, but note that English is permitted to seek resolution of his ineffective-assistance-of-

counsel claim in a proceeding instituted pursuant to the provisions of 28 U.S.C. § 2255.