**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0430n.06

**No. 11-5882**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
*Apr 30, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JOSEPH SCOTLAND SMITH, aka Tiny, | ) | WESTERN DISTRICT OF KENTUCKY |
| aka Joseph Smith, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  COOK and WHITE, Circuit Judges; SHARP, District Judge[*]

COOK, Circuit Judge.  Joseph Smith, who pleaded guilty to conspiracy to possess and distribute more than 50 grams of crack cocaine and received a stipulated 10-year sentence under Federal Rule of Criminal Procedure 11(c)(1)(C), appeals the district court's denial of his motion to withdraw the plea.  Citing the plea agreement's appellate waiver, the government moves to dismiss the appeal, and a motions panel of this court referred the motion for consideration with the merits issues.  Having completed that review, we now GRANT the government's motion and DISMISS this appeal.

_____

[*]The Honorable Kevin H. Sharp, United States District Judge for the Middle District of Tennessee, sitting by designation.

I.

In *United States v. Toth*, we joined the prevailing authority of our sister circuits by holding that a valid plea agreement appellate waiver forecloses appeals arising from a district court's denial of a motion to withdraw the plea. 668 F.3d 374, 378–79 (6th Cir. 2012). Applying *Toth*, we will enforce Smith's appellate waiver according to its terms, and deny review of the motion to withdraw, so long as he entered the agreement knowingly and voluntarily. *Id.* at 378.

Instead of directly challenging the knowing and voluntary acceptance of the plea agreement, Smith's appellate brief focuses on a number of his plea-colloquy statements as demonstrating his "serious doubt . . . as to whether he believed he was guilty" of a drug conspiracy, as opposed to just drug use. He also suggests that his potential eligibility for a mandatory life sentence—if the government elected to file an information under 21 U.S.C. § 851 concerning his prior drug convictions—overwhelmed his ability to knowingly and voluntarily plead guilty. The plea hearing transcript shows otherwise.

The transcript reflects that Smith repeatedly hedged in admitting the drug conspiracy, noting his doubts that the government could prove his participation (R. 896, Plea Hr'g Tr. at 39–41)—not exactly a claim of actual innocence. But when the magistrate judge rejected Smith's nonresponsive answers (*see id.* at 43–44) and directed him to the factual basis for written plea agreement's conspiracy charge, he repeatedly and unequivocally admitted his guilt (*id.* at 50–51). Smith did at one point express "I just can't afford a lot of time. I just can't—I just can't risk that." (*Id.* at 44.) But

this statement preceded his repeated admissions to participating in the drug conspiracy (*id.* at 50–51),

which followed repeated reminders from the magistrate judge that the plea must be voluntary and

the factual predicate must be true and match the charged crime (*id.* at 7–8, 43–44, 50).[1]

---

[1]Despite Smith's contrary argument, the magistrate judge's instructions outlined the conspiracy charge in the plea agreement and repeatedly differentiated that crime from Smith's attempts to limit his culpable conduct to personal drug use.  (R. 896, Plea Hr'g Tr. at 10–11 (detailing the charged drug conspiracy), 41–44 (rejecting Smith's answers regarding personal drug use).)  The magistrate judge explained that he could not accept such a qualified plea:

> THE COURT: Okay. I'm not going to accept a guilty plea on this basis at all. You're going to have to go to trial.
>
> THE DEFENDANT: Well, I mean, I really don't feel comfortable going to trial because they --
>
> THE COURT:  Then you're going to have to admit to me that you actually, in fact -- and I don't want you to make anything up here, but you're going to have to admit to me that you, in fact, engaged in discussions with [a co-conspirator] regarding what I think I've come to know in this case as the . . . crack cocaine drug ring in this matter, that you actually were involved in the distribution of crack cocaine, along with [the co-conspirator] and maybe some of these other individuals involved in this. Either you were or you weren't.  Either admit it or you won't.
>
> THE DEFENDANT: I want you to accept the plea, sir.
>
> THE COURT:  No, that's not good enough for me. You're going to have to admit that there is a factual basis here for this plea.  And unless you are willing to admit that you actually did the things that are necessary to prove a conspiracy, I'm not going to take this plea . . . .

(*Id.* at 43–44.)  Smith then expressed concern about a long sentence and admitted "on a true factual and actual basis that [he] engaged in conversations with [the co-conspirator] regarding the distribution of crack cocaine to other persons." (*See id.* at 44–45.)  Moments later, he twice repeated this admission in response to the court's recitation of the plea agreement's factual predicate.  (*Id.* at 51.)

The transcript further reflects Smith's knowing and voluntary waiver of his appellate rights, despite his initial inconsistent answers on that point. After discussing Smith's waiver of his right to appeal or collaterally attack his sentence, the magistrate judge ensured that Smith knew he "[was] giving up all of [his] rights to make an attack upon this sentence and upon [the] conviction." (*Id.* at 23.) Smith initially balked, but upon further questioning, conceded "there is not really much [I] can do once [I] get this—once this plea agreement is filed." (*Id.* at 23–24.) The magistrate judge asked Smith to confirm his understanding that "[he was] giving up [his] right to really make any kind of attack on this by signing off on this agreement," and Smith agreed he "pretty much figured that out when [he] read [the plea agreement]." (*Id.* at 24.) Then, after the government summarized the key terms, Smith again acknowledged his understanding and assent to the plea agreement, including the appellate waiver that "waiv[es] his right to appeal his conviction or sentence" and "waiv[es] his right to contest or challenge his conviction or sentence in any other way." (*See id.* at 33–34.) Smith's appellate brief does not address his understanding of the appellate waiver at all.

In his response to the government's motion to enforce the appellate waiver, Smith vaguely disputes his knowing and voluntary waiver of his right to appeal, suggesting that the magistrate judge's description of the waiver during the plea colloquy left open the possibility that he could appeal the conviction. (Appellant Waiver Resp. Br. at 2–4 (citing R. 896, Plea Hr'g Tr. at 20–21).) The above-quoted portions of the plea-hearing transcript belie Smith's claim that the magistrate judge's statements "*could* logically led [sic] the defendant to believe that he could not appeal the sentence but that an appeal on the conviction was still possible."

II.

Notwithstanding the plea colloquy, the dissent focuses on the reduced penalties of the Fair Sentencing Act (FSA), an argument wholly absent from Smith's response to the government's motion to enforce the appellate waiver. Though Smith introduces this issue in his merits brief on appeal, the government correctly notes that he failed to present the issue properly to the district court. Indeed, Smith omitted the argument from his motion-to-withdraw brief, only to raise a vague FSA-penalty issue in his reply brief. Specifically, that reply brief acknowledges: (i) that the FSA, enacted in August 2010, reduces the mandatory minimum for Smith's crime from 10 years to 5 years; (ii) that it is unclear whether the courts will give retroactive effect to FSA penalties to defendants like Smith, who were convicted before the FSA;[2] and (iii) that counsel did not advise Smith that the FSA might reduce his mandatory minimum. (R. 881 at 4.) Understandably, the district court's opinion denying the motion did not address this issue raised for the first time in his reply brief. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("While we have never articulated precisely what constitutes raising an issue with the district court, we have found issues to be waived when they are raised for the first time in motions requesting reconsideration or in replies to responses."); *accord Grider Drugs, LLC v. Express Scripts, Inc.*, 2012 WL 4009703, at *2–3 (6th Cir. Sept. 13, 2012).

---

[2]Last year, the Supreme Court held that the FSA's reduced penalties apply retroactively to post-enactment sentences for pre-FSA crimes. *Dorsey v. United States*, 132 S. Ct. 2321, 2326 (2012).

The dissent would allow this forfeited argument and invalidate the plea agreement on this ground, believing Smith's lack of knowledge of the FSA's reduced penalties rendered his plea "not knowingly entered." Though we retain the discretion to hear forfeited arguments to prevent a "plain miscarriage of justice," *Scottsdale Ins. Co.*, 513 F.3d at 552 (collecting authority, but noting that "[w]e have rarely exercised such discretion"), we decline to excuse Smith's forfeiture here because he does not show that the incorrect advice regarding the statutory minimum (10 years pre-FSA, 5 years now)—an error under Federal Rule of Criminal Procedure 11(b)(1)(I)—affected his knowing and voluntary decision to accept the plea agreement's stipulated 10-year sentence.[3] *See United States v. Martin*, 668 F.3d 787, 791 (6th Cir. 2012) ("If a defendant fails timely to object to a Rule 11 violation, the standard shifts to plain error and the burden is on the defendant to show that but for the error, he would not have pleaded guilty.").

Smith does not attempt to explain how this Rule 11 error constitutes harmful error, *see* Fed. R. Crim. P. 11(h), let alone plain error under the standard applicable to such a forfeited claim, *Martin*, 668 F.3d at 791; *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005). The absence of this briefing weighs against reviving this forfeited issue, because this type of Rule 11 error does not require reversal. *See Martin*, 668 F.3d at 792–93 (explaining that the proper inquiry is whether, under the totality of the circumstances, "the defendant reasonably could be said to have understood

---

[3]Instead, his merits brief conclusorily asserts that "these min [sic] would affect the determination the defendant might make" and "[Smith] should have been allowed to weigh the consequences of the new minimums" before accepting the 10-year deal. His brief neither develops this position nor offers evidence supporting it.

the consequences of his plea regardless of any omission or misinformation [regarding a mandatory minimum] provided by the district court," and finding harmless the district court's inconsistent statements regarding the statutory minimum); *United States v. Bashara*, 27 F.3d 1174, 1180 (6th Cir. 1994) (finding harmless the district court's failure to state the mandatory minimum where the guidelines range put defendant on notice that he would receive well above the mandatory minimum), *abrogated on other grounds by statute as recognized in United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000). Notably, Smith does not address whether the FSA affected his guidelines range or his potential eligibility for a mandatory life sentence, upon the filing of a § 851 information. Smith clearly understood that he would receive the stipulated 10-year plea, less than half his guidelines range of 262–327 months.

Furthermore, Smith offers no reason to excuse his failure to preserve the FSA issue. His July 2011 plea hearing occurred well after the August 2010 passage of the FSA. His most recent default, the failure to mention the issue in his February 12, 2012 opposition to the government's motion to enforce the appellate waiver, further demonstrates his lack of diligence. Arguably, this omission—combined with the minimal treatment of the issue in his merits brief here—constitutes double-forfeiture. *Cf. United States v. Johnson*, 440 F.3d 832, 846 (6th Cir.2006) (declining to consider an issue that did not appear in the statement of issues and received only "perfunctory" treatment in the brief).

No. 11-5882
*United States v. Smith*

In short, no "plain miscarriage of justice" warrants our consideration of this twice-forfeited and minimally briefed issue.

III.

Because Smith's sworn plea hearing statements demonstrate his knowing and voluntary plea, and the plea included a waiver of his appellate rights, we GRANT the government's motion and DISMISS this appeal.

**HELENE N. WHITE, Circuit Judge,** dissenting.  I respectfully dissent.  Under *United States v. Toth*, 668 F.3d 374, 377 (6th Cir. 2012), which I agree controls, a waiver of appeal rights may be challenged on the ground that it was not knowing and voluntary.  Smith raised such an argument below, specifically, that his guilty plea was not knowingly entered because he was misinformed as to the mandatory-minimum sentence, which under the Fair Sentencing Act was five, not ten, years.

Although it may well be that the Government would not have offered Smith better than a 10-year sentence, Smith agreed to plead guilty having been advised by the court, the prosecution and defense counsel that the mandatory-minimum sentence was ten years.  R. 896 at 19-20/Plea Hrg. I agree with Smith that he should have been allowed to weigh the consequences of the new mandatory minimum sentence of five years before he agreed to take a binding 10-year sentence.