NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0063n.06

No. 08-6189

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Feb 01, 2011**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | MIDDLE DISTRICT OF TENNESSEE |
| RONALD FUENTES-MAJANO, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: KEITH, KENNEDY, and COOK, Circuit Judges.

COOK, Circuit Judge. In a fifteen-count indictment, the government charged Ronald Fuentes-Majano with RICO violations, including racketeering conspiracy and murder-in-aid of racketeering. Fuentes, a high-ranking member of the Nashville branch of the La Mara Salvatrucha gang, pleaded guilty to the racketeering conspiracy charge.

Fuentes's plea agreement estimated an advisory sentencing range of 360 months to life "based on the facts . . . known to the government" at the time of the agreement. But if the district court "refuse[d] to accept that range, thereby rejecting the Plea Agreement," the terms permitted either party to withdraw. The agreement also guaranteed that the government would "fully apprise" the probation office and the district court of "all matters" relevant to sentencing; and it waived Fuentes's right to appeal "any sentence within or below the statutory maximum penalty of life

imprisonment," except as "to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel."

At the two-day sentencing hearing, the district court acknowledged Fuentes could withdraw his plea if the court rejected the advisory range of 360 months to life, accepted the suggested range, and invited the parties to introduce evidence relevant to the discretionary factors under 18 U.S.C. § 3553(a). Omar Gomez and Francisco Dago Mendez (two members of Fuentes's gang who told their stories to the prosecutors before Fuentes agreed to his plea) then testified that Fuentes had threatened to kill cooperating witnesses. Despite being surprised by the introduction of this evidence—because the government had not previously disclosed to Fuentes either these witnesses' names or the substance of their testimony—Fuentes cross-examined both witnesses without objecting or requesting a continuance.

After receiving this testimony and other evidence, some of which favored leniency for Fuentes, the district court reiterated the applicable guidelines range—360 months to life—and discussed each of the § 3553(a) factors. Regarding Fuentes's threats to kill witnesses, the district court explained that the threats demonstrated "a lack of true remorse, future dangerousness, and need to protect the public." The court then sentenced Fuentes to life imprisonment. Though the district court looked to balance all the § 3553(a) factors, it admitted that Gomez's and Mendez's testimony was "outcome determinative."

On appeal, Fuentes contends that because the government withheld Gomez's and Mendez's testimony until sentencing (1) the government breached his plea agreement; (2) his life sentence violates due process; (3) his plea, because it was involuntary, violates due process; and (4) his sentence is procedurally unreasonable. We disagree.

I.

Because Fuentes failed to object to Gomez's and Mendez's testimony at the sentencing hearing, we review his first claim—breach of his plea agreement—for plain error. *See Puckett v. United States*, 129 S. Ct. 1423, 1428 (2009); *United States v. Barnes*, 278 F.3d 644, 646 (6th Cir. 2002). Under the plain-error standard, we may reverse only if we find "that (1) there is an error; (2) that is plain; (3) which affected the defendant's substantial rights; and (4) that seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Barnes*, 278 F.3d at 646.

The government's strategy here—withholding Gomez's and Mendez's "outcome determinative" testimony until sentencing—may be questioned. But assuming the withholding to be a breach of the plea agreement (and thus an error), Fuentes must show prejudice—i.e., an effect on his substantial rights. *Id.* This ordinarily means a defendant "must demonstrate that [the error] 'affected the outcome of the district court proceedings.'" *Puckett*, 129 S. Ct. at 1429 (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). And because Fuentes complains of a breached plea agreement, "the outcome he must show to have been affected is his sentence." *Id.* at 1433 n.4 (internal quotation marks omitted). Though Fuentes claims that the breach prejudiced him in four

ways, he establishes no adverse impact on his sentence—the requisite showing under the plain-error standard.

Fuentes first asserts that without Gomez's and Mendez's "outcome determinative" testimony, the district court would have sentenced him to less than life imprisonment. But this alleged prejudice (the district court's reliance on Gomez's and Mendez's testimony) is unrelated to the complained-of breach: Fuentes complains of the lack of notice—that the plea agreement required the government to disclose Gomez's and Mendez's testimony *sooner*, not that the agreement prohibited the government from introducing this damning testimony at all.

Second, Fuentes contends that he would have rejected the plea agreement if the government had revealed the substance of Gomez's and Mendez's testimony before the plea hearing. But this supposed prejudice involves Fuentes's plea—not his sentence. And it is his sentence—not his plea—that Fuentes must show to have been affected. *See id.* (noting that when the government breaches a plea agreement "the question with regard to prejudice is not whether [the defendant] would have entered the plea had he known about the future violation").

Third, Fuentes maintains that earlier disclosure of the testimony—before either the plea hearing or the sentencing hearing—would have caused the district court to recognize its significance to his guidelines range and reject the plea agreement. This alleged prejudice rests on Fuentes's erroneous assumption that the district court, "[b]y making the factual finding that Fuentes had taken post-arrest steps to have cooperating witnesses killed," triggered an obstruction-of-justice

enhancement, thereby elevating Fuentes's guidelines range to strictly life. Yet, the district court did no such thing. Instead, the court (1) repeatedly stated that it was accepting Fuentes's plea agreement with its advisory guidelines range of 360 months to life; (2) repeatedly noted that its only remaining task was to consider evidence relevant to the discretionary § 3553(a) factors; (3) evaluated all the evidence, including Gomez's and Mendez's testimony, under those factors; and (4) sentenced Fuentes to life—the high end of his guidelines range—because Fuentes's threats evidenced a lack of remorse, future dangerousness, and a need to protect the public. In short, the district court neither found that Fuentes obstructed justice nor enhanced his guidelines range.

Fourth, and finally, Fuentes contends that the breach hamstrung his defense at sentencing: it deprived him of "a fair opportunity to prepare to cross-examine Mendez and Gomez," and, given such an opportunity, he "may have been able to effectively counter their . . . testimony." Fuentes specifies nothing further, however, such as the witnesses he would have called, the substance of their testimony, or how he would have attacked Gomez's and Mendez's credibility. *See Olano*, 507 U.S. at 735 (noting that the plain-error standard normally requires "a specific showing of prejudice"). His imprecise assertions of prejudice thus fail to hurdle the plain-error bar. *See, e.g.*, *United States v. Miller*, 531 F.3d 340, 347 (6th Cir. 2008) (finding no prejudice where defendant made "little effort on appeal to explain how he was prejudiced"). And rather than move for a continuance at any point during the two-day sentencing hearing, Fuentes chose to cross-examine the government's witnesses. *See United States v. Matos*, 328 F.3d 34, 43 (1st Cir. 2003) (finding no prejudice where defendant failed to seek a continuance and vigorously cross-examined the witnesses).

Because Fuentes has failed to establish an effect on his substantial rights, the plain-error standard precludes reversal.

## II.

Since Fuentes did not object to Gomez's and Mendez's testimony, we also review for plain error his second claim: that his "life sentence violates the Due Process Clause because it is based on evidence withheld until the middle of the sentencing hearing." *See Barnes*, 278 F.3d at 646. In articulating this claim, Fuentes simply recharacterizes one of his arguments above (that lack of notice hamstrung his defense) as a due process violation. Under the plain-error standard, however, his due process claim fares no better.

We again assume error, however dubious. *See Stewart v. Erwin*, 503 F.3d 488, 498 (6th Cir. 2007) (observing that "no Supreme Court ruling—and, indeed, no federal appellate decision—has recognized a 'clearly established' due process right to" disclosure of all evidence a court relies on at sentencing); *United States v. Barrett*, 890 F.2d 855, 865 (6th Cir. 1989) ("A defendant . . . has no due process right [at sentencing] to be informed in advance of the identity of witnesses or of the expected substance of their testimony."), *superseded by statute on other grounds*, 18 U.S.C. § 3742(e), *as recognized in United States v. Williams*, 940 F.2d 176, 181 n.3 (6th Cir. 1991). But even assuming a due process violation, Fuentes fails to satisfy the third prong of the plain-error standard—an effect on his substantial rights—because he offers no concrete explanation how earlier

notice of Gomez's and Mendez's testimony would have strengthened his defense. *See Olano*, 507 U.S. at 735. The plain-error standard again prohibits reversal.

### III.

Fuentes challenges the voluntariness of his plea on the following theory: the agreement allowed him to withdraw his plea if the district court rejected the agreement; the court implicitly did just that when it used Gomez's and Mendez's testimony to "de facto" enhance his guidelines range; and, despite rejecting the agreement, the court never informed him that he could withdraw his plea. But as discussed, rather than increase Fuentes's guidelines range, the district court accepted the advisory range and then exercised its discretion under § 3553(a) in sentencing Fuentes to the high end of that range. His plea thus withstands his due process challenge premised on his lack of volition.

### IV.

Fuentes objects to the procedural reasonableness of his sentence on two grounds: (1) the district court erred in calculating his guidelines range because it found that he obstructed justice, and (2) the district court materially relied on erroneous facts. In his plea agreement, however, Fuentes waived his right to appeal "any sentence within or below the statutory maximum penalty of life imprisonment," except as "to a claim of involuntariness, prosecutorial misconduct, or ineffective

assistance of counsel." Having received a sentence within the statutory maximum, Fuentes may not now object to the procedural reasonableness of his sentence.

V.

For these reasons, we affirm the district court's judgment.