NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0269n.06

No. 23-5379

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 20, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| ANDREW COUCH, | ) | |
| Defendant-Appellant. | ) ) | OPINION |

Before: SUTTON, Chief Judge; CLAY and BUSH, Circuit Judges.

**CLAY, Circuit Judge**. Defendant Andrew Couch appeals his conviction and sentence resulting from his guilty plea to two counts of producing child pornography, in violation of 18 U.S.C. § 2251(a) and (e). Although Couch's plea agreement specifies that he cannot appeal his conviction or sentence unless the district court enters a sentence above the Guidelines range, Couch argues that he did not knowingly and voluntarily enter into his plea agreement and the appellate waiver therein. After arguing that his appellate waiver provision is unenforceable, Couch challenges the district court's denial of his motion to withdraw his plea agreement, as well as the procedural reasonableness of the district court's 720-month prison sentence. For the reasons set forth below, we **DISMISS** Couch's appeal as barred by his plea agreement's appellate waiver provision.

## I. BACKGROUND

### A. The Instant Offense

The facts of the instant case are not disputed. In December 2019, the Homeland Security Investigations Internet Crimes Against Children in Knoxville ("HIS-ICAC") received cyber-tips regarding Defendant Andrew Couch's production and distribution of child pornography via the username daddy9413161719@gmail.com. The account subscriber information allowed investigators to link this account to Couch, and HIS-ICAC subsequently obtained a search warrant for Couch's residence. The search uncovered two phones—one that belonged to Couch, and a second phone that belonged to his girlfriend. A further search of Couch's phone uncovered multiple videos of child pornography produced by Couch involving H.L., his three-year-old stepdaughter. "There were a total of 31 images and 11 videos on the defendant's cellular phone," depicting the rape and sexual abuse of his stepdaughter. PSR, R. 34, Page ID #149.

During the execution of the search warrant, officers described the hazardous condition of Couch's home, which contained "'heaps' of garbage, bugs, bottles of urine, broken furniture, and spoiled food." *Id.* at Page ID #150. Couch and his co-conspirator girlfriend, Breanna Sluder, were raising three children in this environment. The couple produced child pornography with two of their children.[1] The children were taken into the custody of the Tennessee Department of Children Services. Eventually, H.L. was interviewed and recounted the events that are depicted in Couch's videos, as well as several other troubling details about Couch's abuse of her.

In addition to the sexual exploitation of his own stepchildren, the investigation of this case uncovered several additional reports of child sexual abuse committed by Couch against other

---

[1] For the sexual abuse of their children, Sluder has also been prosecuted and was sentenced by the district court to 360 months' imprisonment.

victims. These reports spanned from 2008 to 2015 and involved four different minor victims, G.R., A.B., M.B., and J.B. Each of these reports resulted in the Department of Children Services substantiating the abuse and/or the case being prosecuted. Beyond the victim reports, the investigation also uncovered a Lexar 4GB micro SD card taken from Couch's phone in 2014 that contained over 150 images and videos of child pornography, including photos of G.R., A.B., M.B., J.B., and several additional local unidentified children.[2] In all, Couch possessed 2,382 images and 343 videos of child pornography, many of which were distributed in interstate commerce.

## B. Couch's Plea Agreement

Based on the conduct described above, Couch was charged in a four-count indictment, which included the offenses of: (1) one count of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2); (2) two counts of production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e); and (3) one count of possession and access with intent to view child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). At the outset of plea negotiations in March 2020, the parties preliminarily determined with the assistance of the probation office that Couch's Guidelines would likely have an advisory range of 292 to 365 months' imprisonment. The probation office cautioned that the range was solely based on "preliminary estimates," and that "[t]he guidelines may be more or less depending on any final information." Preliminary Guidelines E-mails, R. 64-1, Page ID #377.

---

[2] The PSR notes that, although some of the children depicted in the images of child pornography have been identified through the National Center for Missing and Exploited Children, "hundreds, if not thousands, of children [] have yet to be identified as the victims of the sexual abuse depicted in [Couch's] images and videos." *Id.* at Page ID #155.

Approximately two years later, in March 2022, Couch pleaded guilty to the two counts of producing child pornography in exchange for the dismissal of the remaining counts. Although the plea agreement generally noted that each charge carried a statutory penalty range of a minimum of 15 years to a maximum of 30 years' imprisonment, the agreement did not specify a particular sentence or Guidelines range. In addition, the plea agreement provided that Couch would waive his right to file a direct appeal of his conviction or sentence, with the exception of his right to appeal a sentence imposed above the Sentencing Guidelines range or above any mandatory minimum sentence, whichever was greater.

At the change of plea hearing, the district court found that, even though Couch suffered from various mental illnesses, he was competent to plead guilty and was satisfied with his attorney's representation. Couch indicated multiple times that he understood the maximum possible penalties for his crimes, as well as the mandatory minimum penalties. The court confirmed that Couch understood the terms of his plea agreement and held that he was pleading guilty knowingly and voluntarily.

Following the entry of Couch's guilty plea, the government filed a sentencing memorandum requesting 720 months' imprisonment, which followed the presentence report's recommendation entered on August 5, 2022. Instead of timely objecting to the presentence report within 14 days, Couch filed a motion to continue sentencing over a month later. After the district court granted this motion, Couch filed a second motion to continue sentencing, which still did not address the presentence report, over two months later. On December 27, 2022, Couch finally filed his objections to the presentence report. And, over a month after submitting his untimely objections, Couch filed a motion to withdraw his guilty plea on the basis that 720 months' imprisonment vastly exceeded the parties' predictions during their preliminary plea negotiations.

4

Based on the unexpectedly lengthy sentencing recommendation, Couch submitted that "the parties did not reach a meeting of the minds and as such, [he] should be allowed to withdraw his guilty plea." Mot. to Withdraw Plea, R. 45, Page ID #204. In its response in opposition, the government argued that Couch had not shown a "fair and just reason" to warrant withdrawal of the plea agreement, and that Couch could not withdraw his plea on the basis of being dissatisfied with the final Guidelines calculations. The district court denied Couch's motion, and the case accordingly proceeded to sentencing.

### C. Couch's Sentencing

During Couch's sentencing hearing on April 13, 2023, Couch's attorney once again presented the parties' pre-plea communications that indicated that Couch would likely have a base offense level of 40, which would have resulted in a sentence of approximately 292 to 365 months' imprisonment. While conceding that the e-mail warned that the "preliminary calculation" could be "subject to change," Couch's attorney argued that it was nonetheless unfair to subject Couch to the terms of the finalized presentence report, which included a significantly higher Sentencing Guidelines range. Tr. Sent'g Hr'g, R. 60, Page ID #258. The government countered that, although the preliminary calculations were lower, the subsequent investigation uncovered additional facts that resulted in various increases to Couch's base offense level. And importantly, the government consistently represented that the originally presented Guidelines range was merely an estimate that was subject to change. Because Couch's motion to withdraw his plea agreement had already been denied, the court determined that this pre-plea context would be relevant to its later discussion of the § 3553(a) factors.

After ruling on the parties' outstanding objections, the district court then considered the factors delineated in 18 U.S.C. § 3553(a) and imposed a statutory maximum sentence of 30 years

for each count. The district court determined that these sentences should run consecutively, totaling a 720-month term of imprisonment, because "[n]o lesser sentence of imprisonment would sufficiently deter Mr. Couch from committing future offenses or protect the public from any future crimes by Mr. Couch." *Id.* at Page ID #318. Following the district court's sentencing determination, Couch appealed in a timely manner.

## II. DISCUSSION

### A. Standard of Review

As a threshold matter, we must determine whether Couch's appellate waiver contained within his plea agreement operates to bar Couch's challenges to his conviction and sentence. Indeed, it is "well settled that a defendant 'may waive any right, even a constitutional right, by means of a plea agreement.'" *United States v. Toth*, 668 F.3d 374, 377 (6th Cir. 2012) (quotation omitted); *see also United States v. Mezzanatto*, 513 U.S. 196, 201 (1995). To determine whether Couch's waiver provision forecloses appellate review, we must decide: (1) if the defendant's claim falls within the scope of the appellate waiver provision, and (2) whether the defendant "knowingly and voluntarily" agreed to the plea agreement and waiver. *United States v. Milliron*, 984 F.3d 1188, 1193 (6th Cir. 2021) (citing *Toth*, 668 F.3d at 377–78); *see also United States v. Smith*, 525 F. App'x 294, 295 (6th Cir. 2013) (enforcing defendant's appellate waiver according to its terms "so long as [the defendant] entered the agreement knowingly and voluntarily"). This Court reviews *de novo* whether a defendant has waived his appellate rights in a valid plea agreement. *United States v. Detloff*, 794 F.3d 588, 592 (6th Cir. 2015). If there was no valid waiver, then this Court reviews the district court's denial of Couch's motion to withdraw his guilty plea for an abuse of discretion. *United States v. Parks*, 700 F.3d 775, 779 (6th Cir. 2012).

## B. Couch's Appellate Waiver

As described above, Couch pleaded guilty to two counts of producing child pornography. The plea agreement noted that the maximum punishment for each of the counts was 30 years and listed the elements of the offenses. Importantly, in Paragraph 12(a), Couch waived his right to file a direct appeal of his convictions or sentence, subject to one exception: "[Couch] retain[ed] the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater." Plea Ag't, R. 18, Page ID #53. The agreement further specified that Couch waived his right to appeal the district court's determination "as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence." *Id.* at Page ID #54. In Paragraph 12(b), Couch also agreed to waive collateral attack of his convictions or sentence, with two exceptions: "[Couch] retain[ed] the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel." *Id.*

## C. The Scope of Couch's Appellate Waiver

Based on the text of the waiver, the Court must determine whether Couch's claim falls within the purview of his appellate waiver provision. *Milliron*, 984 F.3d at 1193. Couch does not contest that the appellate waiver provision, if entered into knowingly and voluntarily, clearly covers his plea withdrawal claim. We have firmly established that "where a plea agreement states that the defendant waives the right to challenge their 'conviction' on direct appeal, 'an appeal of the denial of a motion to withdraw a guilty plea is an attack on the *conviction*' and is therefore 'subject to [the] appeal waiver provision.'" *Id.* (quoting *Toth*, 668 F.3d at 378–79) (alterations in original). "That the language did not explicitly provide that he could not appeal the denial of his motion does not render his appellate-waiver provision unenforceable." *United States v. Duplessis*,

No. 14-6558, 2016 WL 11782545, at *1 (6th Cir. Feb. 3, 2016) (citing *Toth*, 668 F.3d at 378–79). Accordingly, Couch's plea withdrawal claim falls within the scope of the appellate waiver provision, and this Court may only review challenges to the validity of the plea agreement and the appeal waiver therein. *Milliron*, 984 F.3d at 1193; *see also United States v. Dennis*, No. 22-3023, 2022 WL 17348383, at *3 (6th Cir. Dec. 1, 2022) ("[I]f [the defendant] waived the right to appeal his conviction through a valid appeal waiver, he may not challenge the denial of the plea-withdrawal motion.").

Similarly, Couch's procedural reasonableness claim—that the district court did not adequately explain its decision to impose his 30-year sentences consecutively, rather than concurrently—falls within the scope of the provision. The appellate waiver provision forecloses both a direct appeal of Couch's convictions and of his sentence, as the sentence imposed was not "above the sentencing guideline range determined by the Court." Plea Ag't, R. 18, Page ID #53. *Cf. Detloff*, 794 F.3d at 593 ("Because [the defendant's] waiver of these rights was knowing and voluntary, his claims of error regarding his conviction and the procedural reasonableness of the district court's sentencing determination must be dismissed."); *United States v. Fuentes-Majano*, 407 F. App'x 900, 904 (6th Cir. 2011) (based on applicability of defendant's appellate waiver, holding that the defendant "may not now object to the procedural reasonableness of his sentence"); *United States v. Starr*, No. 22-3606, 2023 WL 4417471, at *2 (6th Cir. July 10, 2023) (barring defendant from raising substantive and procedural challenges to his sentence based on his plea agreement's appeal-waiver provision). Because both of Couch's claims clearly fall within the scope of his appellate waiver provision, the determinative issue in this case is whether Couch entered into the agreement and waiver therein knowingly and voluntarily.

### D. Whether Couch's Waiver was "Knowing and Voluntary"

1. *Meeting of the Minds*

In arguing that he did not enter into the plea agreement knowingly, Couch first contends that "there was no meeting of the minds" because Couch thought he was waiving his right to appeal "in exchange for a sentence of about 292 months in federal prison." Pet'r's Br., ECF No. 30, 22–23. Instead of receiving approximately 25 to 30 years' imprisonment, as the parties originally anticipated during pre-plea negotiations, Couch received "the maximum possible sentence," which was "2.47 times greater" than what he had anticipated. *Id.* at 23. Based on the unexpected 60-year sentence that he actually received, Couch argues that he "gave up significant constitutional rights and received nothing in return." *Id.*

An independent review of the record reveals that Couch's guilty plea and appeal waiver were both entered knowingly and voluntarily. Couch's plea agreement specifically states:

> *No promises have been made* by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case *are not binding* on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty pleas. The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

Plea Ag't, R. 18, Page ID #49–50 (emphasis added). The defendant signed this plea agreement, indicating that he understood and voluntarily agreed to the plea agreement.

There is no mention of, much less any promise to adhere to the terms of, this pre-plea preliminarily calculated presentence report. In fact, the text of the plea agreement explicitly counsels otherwise. Accordingly, the appropriate Guidelines range was not an essential term of

Couch's plea agreement. *Cf. United States v. Woods*, 59 F. App'x 162, 163–64 (7th Cir. 2003) (defendant could not withdraw his plea where the court was not bound by the Guidelines estimates in his plea agreement); *United States v. Luczak*, 370 F. App'x 3, 4 (11th Cir. 2010) (affirming district court's denial of defendant's motion to withdraw his guilty plea where defendant acknowledged that "he was aware that the court could impose any sentence up to the statutory maximum, and that he would not be allowed to withdraw his plea if his attorney's predictions about the sentencing range proved inaccurate").

Although the parties engaged in pre-plea negotiations, during which time Couch received a much lower sentencing estimate, this estimate was laced with contingencies. When the government directed the probation officer to send Guidelines estimates to Couch's attorney at the attorney's request, the officer bolded, underlined, and italicized "***preliminary guidelines calculations***" to thoroughly emphasize that the presentence report was not finalized. Preliminary Guidelines E-mails, R. 64-1, Page ID #377. And if that were not enough, the officer then included a specific disclaimer that "[t]hese are only preliminary estimates based on preliminary information. The guidelines may be more or less depending on any final information we may receive. No criminal history records were considered." *Id.* Both Couch and his attorney were on clear notice that the finalized presentence report could differ from the initial estimate.

In addition, the district court carefully complied with the strict requirements of Rule 11(b) of the Federal Rules of Criminal Procedure. During the change of plea hearing, Couch agreed that his attorney explained the maximum possible penalties. The district court directly addressed the appellate waiver provisions within Paragraph 12 of Couch's plea agreement, explaining that Couch was agreeing to waive his right to file an appeal of his sentence or convictions with one exception. Couch replied that he understood and had no questions regarding this provision of his plea

agreement. *See United States v. Jones*, 403 F.3d 817, 823–24 (6th Cir. 2005) (acknowledging that, in determining whether a guilty plea is knowing and voluntary, "a straightforward and simple 'Yes, your Honor' is sufficient to bind a defendant to [the plea agreement's] consequences" (quoting *United States v. Walker*, 160 F.3d 1078, 1096 (6th Cir. 1998))). The district court then asked again whether Couch understood the maximum possible penalty for his offenses both when he pleaded guilty to count two, as well as when he pleaded guilty to count three. Couch replied that he understood the maximum and minimum penalties both times. Any time that Couch had a doubt or a question, the court allotted time for Couch to discuss with his attorney. Overall, the district court repeatedly reminded Couch that each count could result in a maximum sentence of 30 years' imprisonment, and meticulously dissected the provisions of Couch's appellate waiver.

Finally, Couch's repeated acknowledgement that he understood that he was subject to up to 30 years' imprisonment for each of the counts to which he pleaded guilty—both during his plea colloquy and during his sentencing hearing—further belies his contention that there was no "meeting of the minds." *Cf. Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (where the trial court has followed the required procedure in Rule 11, "the defendant is bound by his statements in response to that court's inquiry," as the trial judge cannot administer a plea agreement that consists of "secret terms known only to the parties" (quotation omitted)). Based on the text of the plea agreement and Couch's representations during his plea colloquy, Couch entered into both the plea agreement and the appellate waiver therein knowingly and voluntarily. The waiver provision is thus enforceable and bars review of Couch's challenges to his convictions and sentence on appeal.

2. *Ineffective Assistance of Counsel*

A valid plea also requires that Couch have available the advice of competent counsel. *See Brady v. United States*, 397 U.S. 742, 756 (1970). Couch's second argument to invalidate his appellate waiver provision is that his counsel was ineffective because he erroneously anticipated a more lenient sentence of 292 months. We "ordinarily do not review ineffective assistance of counsel claims on direct appeal because the record is usually insufficient to permit adequate review." *United States v. Tudor*, 796 F. App'x 267, 270 (6th Cir. 2019); *see also United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012). However, we may elect to review the ineffective assistance claim on direct appeal if the parties have adequately developed the record. *United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000).

Contrary to Couch's contentions, which are unsupported by any citation to the record, the record in this case does not contain the contents of Couch's conversations with his trial counsel regarding the presentation of the potential sentencing options. The district court did not hold any evidentiary hearing related to Couch's potential ineffective assistance of counsel claims, and in fact noted that discussions related to the plea negotiations were "[not] appropriate for the Court to consider or assess." Tr. Sent'g Hr'g, R. 60, Page ID #268. *Cf. United States v. Williams*, 682 F. App'x 453, 458 (6th Cir. 2017) (holding that the record was not sufficiently developed for Court to review IAC claim related to defendant's attempted plea withdrawal); *United States v. McCarty*, 628 F.3d 284, 295–96 (6th Cir. 2010) (holding that, when the appellate record "consists largely of unsubstantiated allegations without affidavits from defense counsel or [the defendant]," it is not adequately developed); *United States v. Carson*, 32 F.4th 615, 621 (6th Cir. 2022) (ruling on IAC claim where the district court held several evidentiary hearings, at which the defendant testified

that his attorney promised him that pleading guilty would result in a sentence of only seventeen years).

Although there is evidence in the record related to the government's preliminary estimation of the applicable sentencing range, there is no evidence related to the manner in which Couch's attorney presented this estimate to Couch or later presented the plea agreement. Without evidence of the content of these conversations, this Court cannot determine whether Couch's counsel effectively negotiated his plea agreement or meaningfully explained the maximum and minimum sentencing possibilities. We therefore decline to review Couch's ineffective assistance of counsel claim, as pursuit of this issue is "more appropriately undertaken pursuant to 28 U.S.C. § 2255." *Tudor*, 796 F. App'x at 270.

### III. CONCLUSION

Based on the text of the plea agreement and Couch's representations at his plea colloquy, the plea agreement and the appellate waiver were entered into knowingly and voluntarily. Therefore, the appellate waiver provision operates to bar Couch's claims challenging his convictions and sentence. For the reasons set forth above, we **DISMISS** Couch's appeal as related to these claims. As for Couch's ineffective assistance of counsel claim, we **DISMISS** this claim without prejudice to his right to seek relief under 28 U.S.C. § 2255, which is also expressly permitted under his plea agreement.