RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0183p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DON WOODSON ELLIS,

*Defendant-Appellant*.

> No. 23-3147

───────────────

Appeal from the United States District Court for the Northern District of Ohio at Toledo.
No. 3:18-cr-00532-1—Jeffrey James Helmick, District Judge.

Argued: June 11, 2024

Decided and Filed: August 16, 2024

Before: WHITE, STRANCH, and MURPHY, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Stephenie N. Lape, STEPHENIE N. LAPE, PLLC, Cincinnati, Ohio, for Appellant. Matthew D. Simko, UNITED STATES ATTORNEY'S OFFICE, Toledo, Ohio, for Appellee. **ON BRIEF:** Stephenie N. Lape, STEPHENIE N. LAPE, PLLC, Cincinnati, Ohio, for Appellant. Matthew D. Simko, UNITED STATES ATTORNEY'S OFFICE, Toledo, Ohio, for Appellee.

───────────────

## OPINION

───────────────

MURPHY, Circuit Judge. After carjacking a gas-station customer and robbing a bank, Don Ellis pleaded guilty to several offenses. He admitted that he had, among other things, twice used or carried a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). On appeal, Ellis argues that the district court should have allowed him to withdraw his

guilty plea.  He also argues that his indictment failed to allege a § 924(c) offense.  And he argues that the court constructively amended the indictment to fix this error.  But all three claims suffer from the same problem: Ellis waived his right to appeal as part of his plea agreement.  He nevertheless suggests that we may hear these claims because he did not knowingly plead guilty.  He adds that the alleged indictment error qualifies as a jurisdictional defect that he could not waive.  Because both arguments lack merit, we grant the government's motion to dismiss this appeal.

I

On August 13, 2018, Ellis robbed a customer of a Valero gas station in Toledo, Ohio.  After threatening this customer with a gun, Ellis stole his Pontiac Grand Prix and $200 in cash.  Later that day, Ellis robbed a Fifth Third Bank.  But a bank teller hid a GPS tracker in the money that Ellis took.  The police used this tracker to find Ellis.  He led them on a high-speed chase, which ended when he crashed the Grand Prix.  Officers uncovered a handgun and the stolen bank funds in the stolen car.  They arrested Ellis.  After spending two days in jail, he escaped by pretending to be another inmate.  The police found him five days later at a Michigan hotel.

This conduct led a federal grand jury to indict Ellis on six counts.  The grand jury charged him with carjacking for stealing the Grand Prix from the gas-station customer, *see* 18 U.S.C. § 2119(1), bank robbery for stealing the money from the Fifth Third Bank, *see id.* § 2113(a), and escape for absconding from the jail, *see id.* § 751(a).  Because a state court had previously convicted Ellis of bank robbery, the grand jury also charged him with unlawfully possessing a firearm as a felon.  *See id.* § 922(g)(1).  Lastly, the grand jury charged Ellis with two counts of what is known as a "§ 924(c)" offense: using or carrying a firearm during and in relation to a crime of violence.  *See id.* § 924(c).  The predicate "crime of violence" for Ellis's first § 924(c) count was the carjacking and the predicate crime for his second § 924(c) count was the bank robbery.

Ellis entered into a plea agreement with the government under Federal Rule of Criminal Procedure 11(c)(1)(C).  He agreed to plead guilty to all six counts.  He also agreed to waive his right to appeal his conviction and sentence except in limited circumstances.  In exchange, the

government agreed to propose a below-guidelines sentence of 201 months' imprisonment.  If the court rejected this proposed sentence, however, Ellis would have the right to withdraw his plea. *See* Fed. R. Crim. P. 11(c)(5)(B).

The district court held a change-of-plea hearing.  At this hearing, it explained the rights that Ellis would waive by pleading guilty, the nature of his offenses, and the terms of his plea agreement.  Ellis signed the agreement and pleaded guilty.  But the court did not accept the plea agreement at this time.  It instead chose to wait until after it had reviewed Ellis's presentence report to determine if the parties' agreed prison term fit his crimes.  *See* Fed. R. Crim. P. 11(c)(1)(C), (3)(A).

Over four months later (but before sentencing), Ellis moved to withdraw his plea.  As his "fair and just reason" for this withdrawal, Ellis argued that he had not realized that his plea agreement's appeal waiver would bar him from pursuing "possible appellate issues" about the § 924(c) charges.  Mot., R.68, PageID 471–72 (quoting Fed. R. Crim. P. 11(d)(2)(B)).  The district court denied his motion.  It reasoned that Ellis had waited months to file the motion even though it had told him at the change-of-plea hearing that he would generally waive his right to appeal.

At sentencing, Ellis raised two objections.  He renewed his request to withdraw his plea.  He also argued that Count 4 of the indictment—the § 924(c) charge connected to his bank robbery—did not allege a crime.  Under our caselaw, § 924(c)'s language contains two different offenses: *both* "us[ing] or carr[ying] a firearm" "during and in relation to" a "crime of violence" *and* "possess[ing] a firearm" "in furtherance of" a "crime of violence[.]"  18 U.S.C. § 924(c)(1)(A); *see United States v. Combs*, 369 F.3d 925, 930–33 (6th Cir. 2004).  Yet Count 4 mixed and matched the language of these two crimes.  Its title included the verb "possessing" in a caption that otherwise seemed to delineate the "using or carrying" offense: "Using, Carrying, or Possessing a Firearm During and in Relation to Crime of Violence, in violation of 18 U.S.C. § 924(c)[.]"  Indictment, R.10, PageID 44.  Its body garbled the two offenses, too.  It charged Ellis with "us[ing] or carry[ing] a firearm, or, in furtherance of such crime, possess[ing] a firearm, during and in relation to a crime of violence[.]"  *Id.*

The district court rejected Ellis's arguments. It described his indictment claim as raising a "technical error" that Ellis should have asserted earlier. Sent. Tr., R.85, PageID 628. Regardless, the court added that the plea agreement had fixed any problem by listing the crime as "[u]sing or [c]arrying a [f]irearm [d]uring and in [r]elation" to the bank robbery (not possessing a firearm in furtherance of it). Plea Agreement, R.78, PageID 591.

The court thus turned to the sentence. It approved the presentence report's calculation that Ellis had a guidelines range of 214 to 231 months' imprisonment. But the court finally accepted the plea agreement. It sentenced Ellis to the below-guidelines term of 201 months' imprisonment.

II

On appeal, Ellis raises two prior claims and one new one. He renews his argument that the district court should have allowed him to withdraw his guilty plea. And he renews his argument that Count 4's § 924(c) charge failed to state an offense. Yet he now argues that the plea agreement constructively amended the indictment by clarifying this § 924(c) charge. In response, the government has moved to dismiss Ellis's appeal as barred by his plea agreement's appeal waiver. We agree that the appeal waiver applies to Ellis's claims, so we need not decide any of them on the merits.

When defendants enter into plea agreements, they agree to waive various constitutional rights, including their right to a jury trial and right against self-incrimination. *See United States v. Toth*, 668 F.3d 374, 377 (6th Cir. 2012); *see also United States v. Mezzanatto*, 513 U.S. 196, 201 (1995). Plea agreements also routinely waive a defendant's right to appeal a conviction and sentence. *See, e.g.*, *United States v. Milliron*, 984 F.3d 1188, 1192–93 (6th Cir. 2021); *Toth*, 668 F.3d at 378. These appeal waivers can benefit both sides. Defendants can extract useful "concessions" from prosecutors—say, a concession not to seek some sentencing enhancement— as the price for giving up the right to appeal. *Toth*, 668 F.3d at 379. Prosecutors can preserve their limited public resources by avoiding the costs of defending against the appeal. *Id.* But prosecutors would not agree to this exchange if appellate courts regularly allowed defendants to violate the agreement by appealing any and every issue. So our cases have recognized that we

should enforce an appeal waiver according to its terms to "give effect to the intent of the parties as expressed by the plain language in the plea agreement." *United States v. Beals*, 698 F.3d 248, 256 (6th Cir. 2012). As one relevant example, we have repeatedly held that an appeal waiver barred the appeal of a denial of a motion to withdraw a guilty plea. *See Milliron*, 984 F.3d at 1193; *United States v. Detloff*, 794 F.3d 588, 592–93 (6th Cir. 2015); *Toth*, 668 F.3d at 377–79.

At the same time, appeal waivers do not bar *all* appeals. To the contrary, defendants who enter them may seek to appeal on a variety of grounds. Consider four examples. Some defendants have asserted that their appeal waiver's terms did not reach their specific appellate argument. *See, e.g.*, *Beals*, 698 F.3d at 256; *Toth*, 668 F.3d at 378. Other defendants have argued that the district court did not properly accept their guilty plea because it failed to advise them of the appeal waiver's "terms" under Federal Rule of Criminal Procedure 11. Fed. R. Crim. P. 11(b)(1)(N); *see, e.g.*, *Detloff*, 794 F.3d at 592–93. Still other defendants have argued that the appellate court could not constitutionally enforce the appeal waiver because they did not knowingly and voluntarily plead guilty. *See, e.g.*, *United States v. Couch*, 2024 WL 3069357, at *4–5 (6th Cir. June 20, 2024); *United States v. Holdbrook*, 2024 WL 124735, at *3 (6th Cir. Jan. 11, 2024). And still others have claimed that the appeal waiver could not apply to their challenge because it implicated the district court's subject-matter jurisdiction—a type of challenge that defendants cannot waive. *See United States v. Moran*, 70 F.4th 797, 802 (4th Cir. 2023); *see also United States v. McGhee*, 854 F.2d 905, 907 (6th Cir. 1988); *United States v. Meacham*, 626 F.2d 503, 510 (5th Cir. 1980).

Ellis "makes no effort" to raise the first two of these examples as the basis for this appeal. *Milliron*, 984 F.3d at 1193. That is, he does not argue that his three appellate claims fall outside the scope of his appeal waiver. And he does not argue that the district court violated Rule 11. So we need not consider these issues. Instead, Ellis raises only the second two examples. He says that he did not knowingly and voluntarily plead guilty. And he says that one of his claims implicated the district court's subject-matter jurisdiction. We will consider each argument in turn.

*Knowing and Voluntary Plea*. The Due Process Clause prohibits defendants from pleading guilty—and from waiving their constitutional rights—unless they do so in a "knowing

and voluntary" manner. *Parke v. Raley*, 506 U.S. 20, 28–29 (1992); *see Brady v. United States*, 397 U.S. 742, 748 (1970). Federal Rule of Criminal Procedure 11 seeks to guarantee knowing-and-voluntary pleas by requiring district courts to hold plea hearings. *See* Fed. R. Crim. P. 11(b). At these hearings, courts must ensure that defendants understand the nature of their crimes and the rights they will waive by pleading guilty. *See id.*; *United States v. Day*, 2022 WL 17547518, at *2–3 (6th Cir. Dec. 9, 2022); *United States v. Pitts*, 997 F.3d 688, 701 (6th Cir. 2021). Once a district court satisfies this duty, though, a defendant's admissions at the plea hearing serve as a "formidable barrier" to later claims that the defendant misunderstood something about the plea. *Day*, 2022 WL 17547518, at *2 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Ellis has not overcome this formidable barrier. Both his "written plea agreement" and his "plea colloquy" show that he understood his plea's effects. *Holdbrook*, 2024 WL 124735, at *3. Indeed, the district court dedicated nearly an hour at the plea colloquy to explaining "every paragraph" of the plea agreement to Ellis. Plea Tr., R.72, PageID 519. It proceeded through the agreement page by page and asked Ellis to initial each page to confirm that he understood its terms. The court, for example, took time to explain Ellis's right to a jury trial and the subsidiary rights that come with it (such as his right to confront witnesses). Ellis acknowledged these rights and initialed the relevant page of his plea agreement. Likewise, the court took time to explain the offenses that Ellis would plead guilty to, including their elements and punishments. It also explained that the parties had agreed on a sentence of 201 months and that it must sentence him to this amount if it approved the plea agreement. Ellis again confirmed that he knew the nature of his offenses and his likely punishment.

Most relevant here, the court spent an entire page of the transcript discussing the paragraph of Ellis's plea agreement entitled "Waiver of Appeal and Post-Conviction Attack[.]" Plea Agreement, R.78, PageID 594; Plea Tr., R.72, PageID 543–44. This paragraph noted that Ellis had certain rights to appeal his "conviction or sentence" and that, with limited exceptions, he "expressly and voluntarily waive[d] those rights[.]" Plea Agreement, R.78, PageID 594. When summarizing this paragraph, the court said that "if you enter guilty pleas to these charges, and I ultimately . . . accept them," it will then be "too late" for Ellis to claim that he wants to go to trial because Ellis waived "that right to trial and those attendant rights[.]" Plea Tr., R.72,

PageID 544.  The court then explained the appeal waiver's "exceptions," stating that Ellis could "appeal" if the court sentenced him above the agreed term or if he raised ineffective-assistance or prosecutorial-misconduct claims.  *Id.*  But it reiterated that "otherwise, you have to assume, if you do this and I accept this, that you're stuck with those guilty pleas and you are going to get 201 months."  *Id.*  Ellis answered "Yes" that he understood this point and initialed both pages containing the appeal waiver.  *Id.*, PageID 544–45; *cf. Holdbrook*, 2024 WL 124735, at *4.  This "yes" answer generally suffices to show that a defendant acted in a knowing and voluntary way. *See United States v. Jones*, 403 F.3d 817, 823 (6th Cir. 2005) (citing *United States v. Walker*, 160 F.3d 1078, 1096 (6th Cir. 1998)).

To be sure, we could see a potential argument that the district court should have better differentiated the waiver of Ellis's *appeal* rights from the waiver of his *trial* rights.  The court at times lumped all these rights together when discussing the appeal waiver.  Yet Ellis does not challenge anything in this appeal-waiver colloquy, so we flag the issue only as a cautionary note.

Ellis instead focuses our attention elsewhere.  According to Ellis, he did not knowingly plead guilty because he and his lawyer did not spend enough time going over the plea agreement. To support this theory, Ellis points to his statement at the change-of-plea hearing noting that he "breezed through" the agreement before the hearing.  Plea Tr., R.72, PageID 519.

This argument has both legal and factual problems.  Legally, Ellis cites no authority for the rule that defendants must consult counsel for any preordained period before they can enter a knowing plea.  *Cf. Iowa v. Tovar*, 541 U.S. 77, 81 (2004).  Factually, Ellis said later in the plea colloquy that he had plenty of time to speak with his attorney, that he had told her his "side of the story," that she had explained what the government must prove to convict him, and that he was "satisfied with her advice and competence as [his] lawyer in this case[.]"  Plea Tr., R.72, PageID 548–49.  He also never asked for time to review the agreement with his attorney, even though the district court told him that it would "give [him] as much time as [he] need[ed]" if he "want[ed] to talk to" counsel at any point during the change-of-plea hearing.  *Id.*, PageID 516. Without more, then, Ellis's passing statement cannot overcome the "formidable" presumption created by the plea colloquy that he knowingly pleaded guilty.  *Blackledge*, 431 U.S. at 74.

Even if he generally entered a knowing and voluntary plea, Ellis next claims, he did not understand the specific appeal waiver. He relies on an after-the-fact statement in his motion to withdraw his guilty plea. In that motion, Ellis's counsel noted that Ellis had told her "that he was not fully aware of the agreement's consequences to his right to contest future possible appellate issues related to the [§ 924(c)] charges." Mot., R.68, PageID 472. Yet this conclusory and unsworn hearsay in a brief does not even count as evidence—let alone evidence that could rebut the "formidable" presumption that he understood his rights. *Blackledge*, 431 U.S. at 74.

One last point. Ellis hints that his trial lawyer might have provided constitutionally "ineffective" assistance if the lawyer did, in fact, skim over the plea agreement with him. Reply Br. 2–3. This "ineffective assistance" claim would fall within one of the exceptions to his appeal waiver. Plea Agreement, R.78, PageID 595. But when defendants need evidentiary support for their ineffective-assistance claims, we generally channel those claims to the venue in which they can present this evidence: post-conviction proceedings under 28 U.S.C. § 2255. *See Day*, 2022 WL 17547518, at *4 (citing *Massaro v. United States*, 538 U.S. 500, 504–05 (2003)); *see also United States v. Tudor*, 796 F. App'x 267, 270 (6th Cir. 2019). This rule applies here. The record leaves unclear how much time Ellis's lawyer spent discussing this plea agreement with him. So if Ellis seeks to pursue this claim, he should file an evidence-backed § 2255 motion.

*Jurisdiction*. Even if Ellis knowingly and voluntarily waived his right to appeal, he insists that the waiver cannot validly bar him from raising the alleged indictment error. Recall Ellis argues that his indictment failed to adequately charge a § 924(c) offense because it mixed the language for the using-or-carrying-a-firearm offense with the language for the possessing-a-firearm offense. *See Combs*, 369 F.3d at 930–33. And Ellis points out that our 1988 decision in *McGhee* noted that a guilty plea does not waive an "objection that the indictment fails to charge an offense[.]" 854 F.2d at 907 (quoting *Meacham*, 626 F.2d at 510). The Fifth Circuit decision on which we relied in *McGhee*, in turn, reasoned that "a guilty plea does not act as a waiver of jurisdictional defects such as an indictment's failure to charge an offense." *Meacham*, 626 F.2d at 510.

Ellis's argument lacks merit because the Supreme Court has since rejected the premise that indictment errors deprive district courts of subject-matter jurisdiction. *See United States v.*

*Cotton*, 535 U.S. 625, 629–31 (2002). In *Cotton*, all agreed that the indictment failed to adequately allege the charged drug offense because it omitted the quantity element. *See id.* at 632. Nevertheless, the Court held that this failure did not deprive the district court of its subject-matter jurisdiction over the offense. *Id.* at 631. According to the Court, the claim that an indictment fails to adequately charge an offense "goes only to the merits of the case," not to the district court's power to adjudicate it. *Id.* (quoting *Lamar v. United States*, 240 U.S. 60, 65 (1916)). To be sure, *Cotton* concerned only an indictment's omission of a sentence-enhancing element (the quantity of drugs involved). *Id.* at 632. Yet we have since interpreted its reasoning to apply to indictment omissions more broadly, such as the failure to include other elements of the charged offense. *United States v. Hobbs*, 953 F.3d 853, 856–57 (6th Cir. 2020). As a result, criminal defendants can both forfeit and waive this type of indictment challenge. *See Cotton*, 535 U.S. at 630–31.

This holding conflicts with *McGhee*'s earlier conclusion that a defendant cannot waive the claim that the indictment failed to allege an offense. 854 F.2d at 907. In fact, the Fifth Circuit already recognized that *Cotton* overruled *Meacham*—the decision on which we relied in *McGhee*. *See United States v. Scruggs*, 714 F.3d 258, 263 (5th Cir. 2013). Like the Fifth Circuit, we now hold that *Cotton* overruled *McGhee*, too. Under *Cotton*'s logic, the district court had jurisdiction in this case because the indictment charged Ellis with committing an "offense[] against the laws of the United States." 18 U.S.C. § 3231. And Ellis's claim that the indictment failed to adequately allege a violation of § 924(c) "goes only to the merits of the case." *Cotton*, 535 U.S. at 631 (quoting *Lamar*, 240 U.S. at 65). Ellis thus could waive this argument by entering into a plea agreement with an appeal waiver that covered it. *Cf.* Fed. R. Crim. P. 12(b)(3)(B)(v).

For all these reasons, we grant the government's motion to dismiss this appeal.