NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0124n.06

No. 24-1726

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| VIJAYA SHETTY, | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

**FILED**
Mar 11, 2026
KELLY L. STEPHENS, Clerk

Before: BOGGS, SILER, and KETHLEDGE, Circuit Judges.

BOGGS, Circuit Judge. Vijaya Shetty participated in an international conspiracy that defrauded elderly victims of more than $11 million. On multiple occasions, he knowingly and intentionally drove co-conspirators to collect money from victims, verified the amount collected, and passed fraud proceeds along to more senior members of the conspiracy. He pleaded guilty to conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349. Although he lodged no objection to the validity of his guilty plea or to the district court's procedure in accepting his plea, he now appeals, claiming that his plea was not knowing, intelligent, and voluntary. Finding no plain error, we affirm.

**I**

This case stems from an international conspiracy that allegedly defrauded about 50 victims, most of whom were elderly, of more than $11 million. It involved a familiar scheme: tricking victims into believing that their bank accounts had been compromised, that their computers had been hacked, or that they had been targeted in a criminal investigation and pressing the victims to

pay money to 'resolve' the supposed problem. Conspirators in India contacted victims in the United States through unsolicited computer pop-ups, emails, and telephone calls. They defrauded victims into sending them money through wire transfers, checks, gift cards, and cash payments.

To obtain the cash payments, the conspirators required on-the-ground assistance in the United States. Enter Vijaya Shetty. By late 2021, two other members of the conspiracy offered him a job as a "courier," where he would "travel[] around the country at their direction, picking up packages." R. 188 at 20, PageID 885. This driving gig, it turned out, involved transporting still other members of the conspiracy—called "runners"—to meet with victims and collect their funds. Shetty would then count and document the stolen amounts before distributing the proceeds to more senior members of the conspiracy. Shetty performed this role on four occasions in December 2021 and January 2022.

On July 18, 2023, a grand jury sitting in the Western District of Michigan indicted Shetty and others for conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349. A conviction under those statutes is punishable by up to 20 years of imprisonment. The indictment also contained a claim for forfeiture of fraud proceeds.

On December 19, 2023, Shetty filed a plea agreement that stipulated to a factual basis of guilt. Shetty admitted that he participated in the conspiracy from December 2021 through January 2022 and acted, at his co-conspirators' direction, as a driver on four occasions. He admitted that he knew that the conspiracy defrauded elderly victims, in part, because he had listened, while participating in the scheme, to recordings of phone calls between the co-conspirators in India and the victims. He agreed that he was responsible for a loss amount just shy of $600,000. In signing the plea agreement, Shetty certified that he had read the agreement and carefully discussed every part of it with his attorney, that he understood and voluntarily agreed to its terms, and that his

attorney had advised him of his rights, possible defenses, and the consequences of the agreement, including his sentencing exposure. Shetty agreed to waive his right to appeal in part, but he preserved his right to appeal on the grounds that "[t]he guilty plea was involuntary or unknowing." R. 121 at 13, PageID 343.

Shetty and the government consented to a change-of-plea hearing conducted by a magistrate judge. Shetty, a native of India who has lived in the United States since 2009 and naturalized as a United States citizen in 2019, appeared with the help of a Hindi-speaking interpreter because he spoke only limited English. The magistrate judge verified that Shetty was competent to enter a plea and understood the proceedings, urging him to alert the court at any point if he desired clarification. She asked whether Shetty had reviewed the indictment with his lawyer through an interpreter. She then summarized the allegations in the indictment in considerable detail, covering more than four pages of the hearing transcript. Shetty acknowledged that he understood that the charge would require the government to prove, in part, that he knowingly joined the conspiracy. The magistrate judge also reviewed the statutory penalties, explained that the district judge alone would determine his sentence, and warned that Shetty would remain bound by his plea if his sentence proved more severe than he anticipated.

The magistrate judge then turned to Shetty's plea agreement. She asked a host of questions about the voluntariness of Shetty's plea and his understanding of the plea's consequences before reading, in its entirety, the paragraph where Shetty certified his acceptance of the agreement, just above his signature. She then asked the prosecutor to review each paragraph of the plea agreement, after which Shetty indicated that he understood and agreed with the prosecutor's recital. After that, the prosecutor repeated the factual basis for the plea, including evidence that Shetty knowingly and voluntarily participated in the conspiracy. Shetty, under oath, responded "[n]o" when

asked whether he disagreed with any part of the prosecutor's statement. R. 168 at 31, PageID 650. But when asked again by the magistrate judge to confirm that he "voluntarily join[ed] that conspiracy and [took] part in it," Shetty responded that his co-conspirators "tricked [him] into doing this." *Ibid.*

Shetty's counsel and the magistrate judge tried to address this revelation, asking Shetty when he learned that the funds he had received were obtained fraudulently. Shetty struggled to communicate a clear timeline, while also indicating that his coconspirators had threatened him "the last time" he acted as a driver. R. 168 at 31–33, PageID 650–52. Shetty's statements prompted the magistrate judge to say that she lacked a sufficient factual basis at that point to uphold the agreement. Shetty's counsel requested a brief recess to confer with his client.

When court resumed, the prosecutor asked Shetty a series of questions, as if on cross-examination, about his participation in the conspiracy. Shetty replied that each time he acted as a driver, from the beginning, he knew that the cash came from a scam originating from a call center in India. He clarified that he only felt threatened to participate in the scheme the last time that he acted as a driver.

Now satisfied with the factual basis for the plea, the magistrate judge found Shetty's plea knowing and voluntary and advised both parties that she would recommend that the district court accept the plea. She notified the parties that they would have a fourteen-day period to object to her report and recommendation. She concluded the hearing by asking Shetty to confirm once more that he understood everything that had happened in court.

Shetty did not file any objections to the magistrate judge's report and recommendation, which the district court adopted in accepting his guilty plea. The probation office prepared a detailed account of the conspiracy overall and Shetty's participation in it for Shetty's pre-sentence

report (PSR). Shetty did not object to any aspect of the PSR, including its factual accuracy, either in writing or at his sentencing hearing.

With the aid of a translator, Shetty addressed the sentencing court in allocution. He stated that if he had "kn[own] beforehand that this was something unlawful and bad, [he] would not have done it." R. 363 at 13, PageID 2749. The district judge would observe that Shetty's comments "that he didn't know the rules and the laws of this country rings a bit hollow" given his extensive residency in the United States and the "heinous" nature of his conduct. R. 363 at 19, PageID 2755. She sentenced Shetty to 63 months in prison.

Shetty filed a timely pro se notice of appeal. He is now represented by different counsel on appeal.

## II

Shetty invokes two sources of authority to claim that his guilty plea was not knowing, intelligent, and voluntary: the 5th Amendment's Due Process Clause and Federal Rule of Criminal Procedure 11. "[C]onstitutional and rule-based challenges" to the validity of a guilty plea "are often entangled." *United States v. Presley*, 18 F.4th 899, 903 (6th Cir. 2021) (citation modified). Although "Rule 11 provides a set of legal protections distinct from those in the Constitution itself," *United States v. Short*, 128 F.4th 823, 826 (6th Cir. 2025), plain-error review applies no matter how we characterize Shetty's arguments because, as he concedes, he never objected to the validity of his guilty plea below. *Presley*, 18 F.4th at 903; *United States v. Hogg*, 723 F.3d 730, 737 (6th Cir. 2013) (citing *United States v. Vonn*, 535 U.S. 55 (2002)).

Shetty thus bears the burden of proving that the district court committed (1) error, (2) that was obvious or clear, (3) that affected his substantial rights, and (4) warrants our exercise of discretion to rectify the fairness, integrity, or reputation of judicial proceedings. *Presley*, 18 F.4th at 905.

"Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970); *see also United States v. Ellis*, 115 F.4th 497, 501 (6th Cir. 2024). The three components of a valid plea—it must be knowing, intelligent, and voluntary—can overlap. But generally, a plea is knowing if a defendant understands his constitutional rights, the nature of the crime charged, the consequences of his guilty plea, and the factual basis for his plea. *United States v. Webb*, 403 F.3d 373, 378–79 (6th Cir. 2005); *United States v. Pitts*, 997 F.3d 688, 701 (6th Cir. 2021) (quoting *United States v. Goldberg*, 862 F.2d 101, 109 (6th Cir. 1988)) ("Assuring that there is a sufficient factual basis is intimately related to the question of whether the plea is entered into knowingly."). A plea is generally intelligent if the defendant was advised by competent counsel, aware of the nature of the charge against him, and competent to enter a plea. *Brady*, 397 U.S. at 756; *Bousley v. United States,* 523 U.S. 614, 618 (1998). And a plea is voluntary if the defendant was "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel . . . unless induced by threats . . . [or] misrepresentation (including unfulfilled or unfulfillable promises)." *Brady*, 397 U.S. at 755 (citation modified).

Rule 11 helps to implement these principles by directing district courts to advise defendants seeking to plead guilty of the rights that they would waive and the maximum penalty that they would face. Fed. R. Crim. P. 11(b)(1). District courts must also "determine that the plea is

voluntary" and "determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(2), (b)(3). "Once a district court satisfies this duty, . . . a defendant's admissions at the plea hearing serve as a formidable barrier to later claims that the defendant misunderstood something about the plea." *Ellis*, 115 F.4th at 501 (citation modified).

Shetty attacks all three components of the validity of his guilty plea, arguing that it was not knowing, not intelligent, and not voluntary. Evaluating each in turn, we conclude that the district court did not plainly err in accepting Shetty's plea.

*Knowing.* Shetty contests the knowingness of his plea on two grounds: (1) that it lacked an adequate factual basis and (2) that he did not understand the potential sentencing consequences that his conviction would carry. In attacking the factual basis for his plea, Shetty's arguments prompt us to analyze the plea from opposing perspectives. Considering the plea from *his* perspective, Shetty claims that he did not understand the factual basis for his plea, because "he did not understand his role in the offense or that what he did was wrong." Appellant Br. 10. Considering the plea *from the district court's* perspective, Shetty claims that the "magistrate [judge] did not have a factual basis to accept his plea" because of Shetty's "initial statements" that "he did not know the fraudulent nature of the activities." *Id.* at 11.

Starting from Shetty's perspective, his "plea agreement and plea colloquy make clear that he understood the charges against him." *Pitts*, 997 F.3d at 701. Shetty's repeated confessions, in a signed writing and in sworn statements, that he participated knowingly and voluntarily in the conspiracy demonstrate that he understood and agreed with the factual basis for his guilt. The relative simplicity of the conspiracy and Shetty's role in it reinforces this conclusion, as does the magistrate judge's thoroughness at the change-of-plea hearing in clarifying Shetty's limited disagreement with the factual basis for his plea. *See Webb*, 403 F.3d at 378–79.

Attempting to overcome the "formidable barrier" of his signed plea agreement and sworn plea colloquy, *Ellis*, 115 F.4th at 501–02 (citation modified), Shetty offers four explanations that he did not understand his role in the conspiracy or the wrongfulness of his conduct. All of them fail to persuade.

Shetty claims that he "was not very sophisticated," Appellant Br. 10, but it required no sophistication to act as a driver in this conspiracy nor to understand how that conduct triggered criminal liability, because he received the assistance of counsel and a thorough colloquy with the magistrate judge. He explains that he did not speak English well, but that similarly misses the mark, because he communicated with co-conspirators in Hindi and reviewed his plea agreement and appeared in court with the aid of an interpreter. He protests that he did not understand the criminality of his conduct, but ignorance of the law offers no defense to his conspiracy charge. *See United States v. Feola*, 420 U.S. 671, 686–87 (1975); *United States v. Trevino*, 7 F.4th 414, 423–28 (6th Cir. 2021) (detailing the very limited circumstances when the government must prove that the defendant knew the unlawfulness of his conduct to prove a conspiracy charge). And his bare assertion that his co-conspirators threatened him could, at most, limit his liability for part of the underlying conduct, because Shetty claimed to act under duress for only the fourth and final time he acted as a driver. *See United States v. Milligan*, 17 F.3d 177, 182 (6th Cir. 1994); *cf. Smith v. United States*, 568 U.S. 106, 111 (2013) ("[w]ithdrawal terminates the defendant's liability for postwithdrawal acts of his co-conspirators, but he remains guilty of conspiracy"). He completed the elements for conspiracy at least a month prior, when he first acted as a driver.

Turning to the district court's point of view, we reorient Shetty's framing of the issue: the question is whether the district judge, not the magistrate judge, had an adequate factual basis to accept his plea. "[T]he district court must only assure itself of a factual basis before entering

'judgment' on the defendant's plea." *Short*, 128 F.4th at 826 (quoting Fed. R. Crim. P. 11(b)(3)). As the rules command, the district judge entered the judgment accepting Shetty's plea and determining his sentence. *See* Fed. R. Crim. P. 32(k)(1); Fed. R. Crim. P. 59(b). Because we assess whether the district judge had a factual basis at the time when she entered judgment, rather than whether the magistrate judge had a factual basis when she recommended acceptance of Shetty's plea, "we may examine the entire record, including proceedings that occurred after the plea colloquy." *Short*, 128 F.4th at 826 (citation modified); *see also Pitts*, 997 F.3d at 697–98.

Rule 11 merely "requires that the court *subjectively* satisfy *itself* of an adequate factual basis." *Short*, 128 F.4th at 826 (quoting *United States v. Adams*, 961 F.2d 505, 511 (5th Cir. 1992) (per curiam) (emphasis in *Adams*). "This is a low bar" that demands only "'some evidence,' not necessarily 'strong evidence.'" *Id.* (quoting *United States v. Mobley*, 618 F.3d 539, 547 (6th Cir. 2010)). The district judge here had plenty of record evidence to find a factual basis of guilt. Shetty's signed admissions and sworn statements, in addition to the PSR's comprehensive summary of the underlying investigation, consistently indicated that Shetty knowingly and voluntarily conspired with his co-defendants to defraud elder victims. The change-of-plea transcript shows that the magistrate judge took great care to resolve any uncertainty about the factual basis for the knowingness and voluntariness of Shetty's participation in the conspiracy. She ensured that Shetty understood the proceedings, explained the charge, reviewed every provision of the plea agreement, detailed the allegations, and confirmed his agreement with the factual basis, save for a limited dispute about the voluntariness of his final act as a driver—more than enough to satisfy Rule 11's requirements. *See United States v. Baez*, 87 F.3d 805, 810 (6th Cir. 1996). Shetty's allocution at sentencing that if he had known "beforehand that this was something unlawful and bad, [he] would not have done it," R. 363 at 13, PageID 2749, does not disturb this conclusion. Regardless of

whether this statement reflected an attempt at remorse (as the district court appeared to interpret it) or a belated attempt at raising a mistake-of-law defense (which would fail, as previously discussed), it fails to undermine the factual basis for Shetty's guilt.

Shetty's second ground for contesting the knowingness of his guilty plea—that he did not understand the sentencing consequences of his guilty plea—is equally unavailing. Shetty claims, without proof, that his lawyer advised him during the recess of the change-of-plea hearing that Shetty would avoid a 20-year prison term and likely receive only a suspended sentence if he pleaded guilty. But the written plea agreement expressly provided that the district court "may impose a sentence with, above, or below the Guideline range, subject to the statutory maximum," which was 20 years. And the magistrate judge thoroughly explained the process by which the district judge alone would determine his sentence, specifically warning Shetty that he would remain bound by his plea even if his sentence proved more severe than he anticipated. Both the written agreement and the colloquy accurately stated Shetty's sentencing exposure and cautioned him not to expect any particular outcome. *See* Fed. R. Crim. P. 11(b)(1)(H), (M). A bare assertion that his attorney overestimated the benefit of pleading guilty cannot overcome, on plain-error review, the extensive notice Shetty received about the potential consequences of his plea. *United States v. Powell*, 798 F.3d 431, 434–35 (6th Cir. 2015) (holding that a defendant's confusion over his potential sentence does not render a plea agreement unknowing where such confusion "was not related to the plea agreement itself"); *cf. United States v. Carson*, 32 F.4th 615, 622 (6th Cir. 2022) (holding, in an ineffective-assistance-of-counsel claim, that "[w]hen an attorney erroneously promises a certain sentencing outcome, a defendant cannot show prejudice if he was accurately advised during the plea colloquy").

*Intelligent.* Shetty claims that he did not intelligently plead guilty because he "had difficulties understanding the nature of the charge to which he was pleading guilty." Appellant Br. 9. This argument falters immediately. "[E]ven when the record is devoid of an explanation of the charge by the judge or of a representation by defense counsel that the nature of the charge has been explained to the defendant," we presume that represented defendants "have been informed adequately by his counsel of the charge to which he pleaded guilty." *Berry v. Mintzes*, 726 F.2d 1142, 1147 (6th Cir. 1984) (citing *Henderson v. Morgan*, 426 U.S. 637, 647 (1976)). Shetty offers no responsive argument, which forecloses his claim on plain-error review. But we need not rely on that presumption alone: Shetty informed the court that he had reviewed the indictment with his lawyer and understood the charge. And the prosecutor and judge thoroughly explained the nature of the conspiracy offense at the change-of-plea hearing.

*Voluntary.* Shetty also disputes the voluntariness of his plea, apparently relying again on the grounds that his lawyer made an improper promise about Shetty's likely sentence if he pleaded guilty and that he was threatened by his co-conspirators. An improper promise by a defendant's own counsel can undermine the voluntariness of the guilty plea. *Brady*, 397 U.S. at 755. But as we have already explained, nothing in the record corroborates Shetty's account of his lawyer's advice, which would be cured in any event by the magistrate judge's colloquy complying with Rule 11. And "[a] plea is not rendered involuntary merely because a prediction that a guilty plea will result in a light sentence does not come true." *Powell*, 798 F.3d at 434–35 (quoting *Stout v. United States,* 508 F.2d 951, 953 (6th Cir. 1975)). Additionally, any threats Shetty's co-conspirators levied against him have no bearing on the voluntariness of Shetty's plea. Shetty insists that his co-conspirators pressured him into continuing to act as a driver, but he has never maintained that his co-conspirators pressured him into pleading guilty.

The district court therefore did not err—let alone plainly err—in accepting Shetty's guilty plea.

**III**

For the foregoing reasons, we **AFFIRM** Shetty's conviction.